[Crim. No. 128. First Appellate District.—February 21, 1908.]

Ex Parte J. D. FLOYD, on Habeas Corpus.

HABEAS CORPUS—CHARGE OF ATTEMPT TO COMMIT FORGERY NOT SUPPORTED BY EVIDENCE—MERE INEFFECTUAL AUTHORITY TO ANOTHER PERSON.—The holding of a defendant to answer under a charge in a police court of an attempt to commit a forgery of printed cigar orders is not sustained by evidence of a want of authority to the defendant to have them printed in the names of certain cigar dealers, and of his assumed authority to have them so printed by a certain printer in their names, at an agreed price per thousand, where it appears that said printer did not attempt to print them, nor intend to do so, without direct authority from the cigar dealers; and the defendant, under such evidence, is entitled to be discharged on *habeas corpus*.

ID.—MERE INTENTION, PREPARATION, OR INEFFECTUAL SOLICITATION TO COMMIT CRIME NOT AN ATTEMPT.—A mere intention or preparation to commit a crime, without any overt act, or a mere ineffectual solicitation to another to commit a crime, which is not committed or attempted, cannot constitute an attempt to commit a crime, nor any offense punishable under the Penal Code.

APPLICATION for discharge on writ of *habeas corpus*.

The facts are stated in the opinion of the court.

James P. Sweeney, for Petitioner.

COOPER, P. J.—On the twenty-eighth day of September, 1907, a complaint was filed in the police court of the city and county of San Francisco, charging the defendant with "Attempt to make, alter, forge and counterfeit a certain instrument and duebill for the payment of property, in the words and figures following, to wit: that the face of said instrument and duebill was figures, to wit: 'Good for one 12½c cigar at any of our stores on the Pacific Coast. M. A. Gunst & Co.'"

An examination was held by a magistrate of said police court, and defendant was held to answer to the superior court for the crime of "Attempt to commit forgery."

He now applies to this court to be discharged upon the ground that the evidence taken before said magistrate does not show that any public offense has been committed.

The evidence is before us with the petition, and shows the facts to be as follows:

The prisoner had for some time prior to May 31, 1907, been in the employ of M. A. Gunst & Co., dealers in cigars and tobacco in the city and county of San Francisco. About the 25th of September, 1907, he went to the place of business of one Lyons, a publisher, and after some conversation as to printing gave Lyons an order or request in writing as follows: "September 25, 1907. I hereby authorize the Pacific Goldsmith Publishing Co. to print 50,000 tickets like sample, to wit, 30,000 for five cigars ea, 12½ cent cigars; and 20,000 for one cigar each for 12½ cent cigars. Purchasing Agent for M. A. Gunst & Co. Price to be $5 per thousand." (Signed) "J. D. Floyd." Lyons took the order, and told the prisoner that he would see about it and if everything was correct he would print the tickets as per the order. M. A. Gunst & Co. had not authorized the prisoner to have any such tickets printed.

The above is all that was done either by the prisoner or by Lyons. Lyons did not commence to print the tickets, nor

did he intend to do so without authority from M. A. Gunst & Co.

Do the above facts show an attempt to commit the crime of forgery?

An attempt to commit a crime is an endeavor carried beyond mere preparation but falling short of execution of the ultimate design. It is an act immediately and directly tending to the execution of the principal crime, and committed by the prisoner under such circumstances that he had the power of carrying his intention into execution, and would have done so but for some intervening cause. The law recognizes a distinction between an intention to commit a crime and an attempt to commit such crime. An intention followed by no overt act cannot be punished. There is also a distinction between an attempt to commit a crime, and merely soliciting one to commit it, as there is between an attempt and mere preparation. Mere soliciting one to commit an act which would constitute a crime if committed is not made criminal by our Penal Code. It was said by Blackburn, J., in the early case of *Regina* v. *Cheeseman*, Leigh & C. 140: "There is no doubt a difference between the preparation antecedent to the offense and the actual attempt; but if the actual transaction is commenced which would have ended the crime if not interrupted, there is clearly an attempt to commit the crime."

In the case of *People* v. *Murray*, 14 Cal. 159, where the evidence disclosed declarations of the defendant of his intention to contract an incestuous marriage with his niece, his elopement with the niece for that avowed purpose, and his request to one of the witnesses to go for a magistrate to perform the ceremony, it was held that the acts fell short of an attempt to commit a crime. It was said by Field, J.: "It shows very clearly the intention of the defendant, but something more than mere intention is necessary to constitute the offense charged. Between preparations for the attempt and the attempt itself there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense. The attempt is the direct movement toward the commission after the preparations are made."

In *People* v. *Stites,* 75 Cal. 570, [17 Pac. 693], the court said: "Mere intention to commit a specific crime does not itself amount to an attempt as that word is employed in the criminal law. There must in addition to the intent—the *mens rea*—be some act done toward the ultimate accomplishment of the proposed crime. But even such acts do not always of themselves amount to an attempt or to an offense of which human laws will take cognizance. For if they be but acts of preparation, however elaborate, our municipal law would not assume to deal with them."

In *People* v. *Compton,* 123 Cal. 403, [56 Pac. 44], it was said by Henshaw, J., in discussing an erroneous instruction in a case where the defendant was charged with forgery: "The portion of the instruction above quoted is directed to the third class of acts—that is to say, to the attempt to pass. By it the jury was told that if one, having a forged instrument in his possession, knowing it to be forged, delivers it to another with intent to have it uttered, published and passed as genuine, he is guilty of forgery. But such was not the common law, and such is not the law under our code. In general, before an attempt to commit a crime can be made out, some overt act toward its commission other than a mere act of preparation for its commission must be established. . . . Now the essence of the third class of forgeries is the attempt to injure an innocent person by foisting upon him a known false instrument. As is aptly said in *People* v. *Rathburn,* 21 Wend. 509, where the subject is learnedly and exhaustively considered: 'Uttering implies two parties—the party acting, and the one acted upon. If it be by way of sale, there must be a vendee; if by pledge, there must be a pledgee; if by offer, there must be some person to hear the offer; if it simply declare its goodness, there must be someone addressed as reader or hearer.' Therefore, if one deliver to his agent a false instrument with the design that the agent shall utter or pass it, the crime of uttering or attempting to pass is not complete until after some overt act done by the agent to this end, for until this shall come to pass, in contemplation of law the paper is still within the control of the principal, and all the steps are but steps of preparation. Equally true is it that if A and B should conspire to commit a crime, and A should deliver a forged in-

strument to B, by whom it was to be uttered, and B should destroy the paper without attempting to pass it, the crime of uttering or attempting to pass would not have been committed, for there would have been no effort to foist it upon an innocent person, and, as has been said, if the uttering is by offer, the offer must be made to someone."

Applying the reasoning in that case to the present, Lyons was but the agent, or rather, the person selected by the prisoner to do the thing the prisoner had in mind. The instrument or ticket that was to be forged or counterfeited or duplicated was still, in contemplation of law, in the possession and under the control of the prisoner. He could have gone to Lyons and countermanded the order, and taken back the ticket or instrument at any time. Lyons never set a type, procured paper or materials, or in any way or manner began the work of printing.

We therefore conclude that the acts of the prisoner amounted to nothing more than solicitation, and that an actual attempt to commit the crime, within the meaning of the law and as defined by the authorities, was not made. However wrongful may have been the intention of the prisoner, or however criminal may have been his motives, we cannot hold under the authorities that the mere preparation or solicitation, as disclosed by the evidence in this case, was an attempt to commit the crime charged against the prisoner.

It is therefore ordered that he be discharged.

Kerrigan, J., and Hall, J., concurred.