[Crim. No. 1417. In Bank.—April 27, 1908.]

THE PEOPLE, Respondent, v. JOHN SIEMSEN, Appellant.

CRIMINAL LAW—MURDER—MOTION TO SET ASIDE INFORMATION—DATE OF COMMITMENT—QUESTION OF FACT — PRESUMPTIONS — CONFLICTING EVIDENCE.—Though an order holding the defendant to answer upon a charge of murder is prerequisite to the filing of the information against him, yet the date of such order is a question of fact to be determined by the trial court, upon a motion to set aside the information; and notwithstanding defendant's counsel testified that the order was not signed when the information was filed, but it purports on its face to be indorsed on the complaint two days prior to the information, the presumptions that official duty was regularly done and that the order was truly dated, constitutes sub-

stantially conflicting evidence to the contrary, and the finding of the trial court to the contrary, in denying the motion, is conclusive upon appeal.

ID.—VOLUNTARY CONFESSION—PRELIMINARY PROOF—QUESTION OF FACT —DISCRETION OF TRIAL COURT—IMPOSSIBILITY OF FIXED RULE.— Though it is essential that the preliminary proof must show that the confession by the defendant was voluntarily made, without previous inducement or intimidation, yet the question whether such preliminary proof is sufficient to show that the confession was free and voluntary, is one of fact addressed to the trial court, and a considerable measure of discretion must be allowed in the determination thereof. The admissibility of such a confession depends so largely upon special circumstances, that no fixed rule can be formulated covering all cases.

ID.—STATEMENT OF DEFENDANT UPON CONFESSION OF CO-DEFENDANT.— The statement of the defendant voluntarily made, while in custody, upon being informed of the confession of a co-defendant voluntarily made by the latter, implicating the defendant with himself, made in the presence of the co-defendant, and admitting the truth of what he said, if shown not to have been induced by fear or promises, was properly admitted in evidence.

ID.—CONFESSION WHILE UNDER ARREST.—The mere fact that the confession of defendant was made to a police officer, while under arrest, does not necessarily render it involuntary; nor does the mere fact that the defendant was informed, in the presence of his co-defendant that the latter had confessed, make the defendant's subsequent confession necessarily involuntary.

ID.—MURDER IN ROBBERY OF BANK—EVIDENCE—POSSESSION AND EXPENDITURE OF MONEY—CORROBORATION OF CONFESSIONS.—Where it appears that the murder was committed upon a bank officer, in pursuance of a conspiracy by the defendants to rob the bank, which robbery was successfully accomplished, evidence of the sudden possession by the defendants of large sums of money, and expenditures made therefrom, corresponding to the facts stated in the confessions made by the defendants, was admissible in corroboration of such confessions, without necessary preliminary proof that they were impecunious before the robbery.

ID.—STATEMENT BY DISTRICT ATTORNEY NOT MISCONDUCT.—It appearing that the alleged confessions by both defendants were admissible in evidence against the defendant, it was not misconduct on the part of the district attorney in his opening statement to refer to the confession made by the co-defendant and to state its purport, and that he would prove it.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

J. J. Greeley, and A. P. Wheelan, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, for Respondent.

SLOSS, J.—John Siemsen and Louis Dabner were, by information filed in the superior court of the city and county of San Francisco, charged with the murder of M. Munekata. Upon a separate trial, Siemsen was found guilty of murder of the first degree, and he appeals from the judgment of death pronounced pursuant to the verdict, and from an order denying his motion for a new trial.

1. Upon being arraigned the defendant moved to set aside the information. His motion was denied, and this ruling is now assigned as error. The ground of motion was that before the filing of the information the defendant had not been legally committed by a magistrate, or more specifically stated, that the information was filed "before any commitment, deposition, or other record showing that said defendant had a preliminary examination, had been returned or filed, and that no order of commitment was indorsed upon an alleged paper purporting to be a complaint." Section 809 of the Penal Code provides for the filing of an information within thirty days after a defendant "has been examined and committed, as provided in section 872 of this Code." Section 872 directs that "if, however, it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, the magistrate must make or indorse on the complaint an order signed by him," holding the accused to answer the charge. It seems to be settled by the decisions of this court that the making of such order, signed by the magistrate, is a prerequisite to the valid filing of an information. (*Ex parte Brannigan,* 19 Cal. 133; *People* v. *Wilson,* 93 Cal. 377, [28 Pac. 1061].) In so far as the section "provides that the order shall be indorsed upon the deposition, the statute may be regarded as directory; but it is essential that it should be reduced to writing, and entered either upon the official docket of the magistrate or upon the complaint or depositions." (*People*

v. *Wilson*, 93 Cal. 377, [28 Pac. 1061]; see, also, *People* v. *Wallace*, 94 Cal. 497, [29 Pac. 950].)

It appears that the information was filed on the third day of December, 1906. The complaint which formed the basis of the preliminary examination was produced at the hearing of the motion to set aside the information. Indorsed upon this complaint was a written order, signed by the magistrate, holding the defendants to answer. This order was, on its face, in full compliance with section 872, and bore date of the first day of December, 1906, two days prior to the filing of the information. To overthrow the apparent regularity of the proceedings, the defendant called as a witness his counsel, J. J. Greeley, who testified that the information had been filed in the superior court at about five minutes before ten o'clock, on the morning of December third, and that at that time the "commitment," or order holding the defendant to answer, had not been signed; that he had seen the complaint in the police court at about 10:30 o'clock on the same morning, and that the signature of the magistrate had not then been affixed to it. E. P. Shortall, a police judge, who had presided over the preliminary examination, testified that he had no independent recollection of the time when he signed the order, but thought he had signed it on the afternoon of December first. "The only thing that calls it to my memory is the date on it." Whether the order holding defendant to answer was signed before or after the filing of the information was a question of fact to be determined by the trial court, and, if there was a substantial conflict of evidence on the point, the conclusion of that court must stand here. We think there was such a conflict. It is true that the testimony of Mr. Greeley was positive, while Judge Shortall expressed only a belief that he had signed the paper on December first, and based this belief on the fact that it bore that date. But the court, in determining whether or not to accept Mr. Greeley's testimony, had a right to consider the presumptions raised by law. One of these is that "official duty has been regularly performed"; another, that "a writing is truly dated." (Code Civ. Proc., sec. 1963, subds. 15, 23.) These presumptions, while disputable, are in themselves evidence (Code Civ. Proc., sec. 2061, subd. 2; *People* v. *Milner*, 122 Cal. 171, [54 Pac. 833]; *Sarraille* v. *Calmon*, 142 Cal. 651, [76 Pac. 497]; *Adams* v. *Hop-*

*kins,* 144 Cal. 19, [77 Pac. 712]; *Moore* v. *Gould,* 151 Cal. 723, [91 Pac. 616]), and will support a finding made in accordance with them, even though there be evidence to the contrary. It was for the trial judge to determine whether Mr. Greeley's testimony was sufficiently convincing to over-come the presumptions, (a) that the district attorney had properly performed his duty by withholding the filing of an information until an order had been signed by the magistrate, and, (b) that the order dated the first day of December had been signed on that day.

2. The prosecution offered evidence tending to show the following state of facts: M. Munekata was the manager and A. Sasaki the cashier of the Kimmon Ginko Bank, located at 1588 O'Farrell Street, in the city of San Francisco. The banking premises contained a private room, separated from the main business office of the bank by a partition of wood and glass. On October 2, 1906, Siemsen entered the bank, made some inquiries of the cashier in the main office, and visited the manager Munekata in the private office. At a few minutes before noon on the third of October, all of the employees and officers of the bank, with the exception of Munekata and Sasaki, went out for lunch, leaving Munekata in the private office, and Sasaki in the business office. About two thousand dollars in gold and several hundred dollars in silver were piled in boxes on a table beside the bank counter. At about half-past twelve one of the clerks returned and found Munekata and Sasaki unconscious and covered with blood. All of the money, with the exception of a few cents, had disappeared. On the floor was a piece of gas-pipe wrapped in paper. Siemsen and Dabner had been seen coming out of the bank at about five or ten minutes past twelve o'clock. The injured men were removed to the emergency hospital, where Munekata died within two hours. He had sustained an extensive fracture of the skull, which, with the resultant hemorrhage of the brain, was the cause of his death. Sasaki's skull was also fractured, but he finally recovered, and was a witness at the trial. The injuries were such as might have been caused by the piece of pipe found on the floor; they could not have been self-inflicted.

Siemsen was arrested on November 3 and taken to the O'Farrell Street police-station where his name was placed on

the "detinue book," so called. He was placed in a cell, but no charge was made against him. On the following day he was taken to the Bush Street police-station and placed in a cell with a guard outside to watch him. At his own request he was confined alone. The public was not permitted to visit him and the police captain in charge of the station testified that if an effort had been made he would not have allowed any one to communicate with him. "At no time," says this witness, "did he make a request for an attorney to be sent for. If he had asked for a lawyer, I certainly would have complied with his request." He was not threatened or abused in any way, in fact, as stated by the same witness, he was shown more consideration than "an ordinary prisoner." He was allowed to communicate with his wife by telephone.

On the day of the alleged confession Police Captain Duke sent for Siemsen. The chief of police and a detective were present. Captain Duke said "Siemsen, I suppose you have heard the boys outside calling out, extra papers, all about the confession of Dabner," and he said "Yes, I have heard it." Prior to that time Siemsen had refused to make any statement unless he received a promise that he would not be hanged and the police officers had refused to make any promise whatever. The alleged confession of Dabner had been reduced to writing and Duke read it to Siemsen. Siemsen stated that parts of it were not true, and on being asked what parts were not correct, specified an entirely unimportant detail. Duke then brought the co-defendant Dabner and his father into the room and re-read the confession in the presence of both defendants. Siemsen stated that he preferred to consult a lawyer before making any statement. The police officers made no reply to this and did not send for an attorney. Duke turned to Dabner and said: "Dabner, is this true?" and Dabner said "Yes, it is true," and looking at Siemsen, he said "Jack, you know it is true." Siemsen hesitated for a few seconds and finally said, "Well, that is the goods, that is true," or words to that effect and shook hands with the chief of police and with Duke, and, thereupon, at Duke's suggestion, signed his name "John Siemsen" to the statement under the words, "This statement is correct throughout," which Duke had first written. Captain Duke testified that he did not

hold out any inducement to Siemsen with reference to what he might state and made no promise of leniency, and made no threats, used no force, and did not put him in any fear. Chief of Police Dinan gave substantially the same testimony as Captain Duke. He also testified that after the signing of the confession newspaper men were admitted, and that in their presence, Siemsen stated that the confession was true, and that it was free and voluntary. Upon this showing the confession was admitted in evidence over defendant's objection. It was in substance as follows: That on the morning of October 3d Siemsen and Dabner left their home together, having planned on the preceding day to rob the Japanese bank. They waited around the bank until they saw the clerks go away and then went in. Siemsen stopped at the main or front office and told the Japanese there (Sasaki) that he wanted to see the manager. Siemsen and Dabner went back to the manager's office and Siemsen struck the manager over the head with a gas-pipe which Dabner had wrapped up in a piece of paper; then Dabner, following out the plan theretofore agreed on by Siemsen and himself, called the other Japanese back to the rear office. When he came back Siemsen struck him over the head several times and he fell. He then started to get up and Dabner struck him on the head with the pipe and he fell again. The defendants went through the till and got about two thousand two hundred dollars, partly in silver and partly in gold, which they put in a hand satchel. They then went to a place where they had left a horse and buggy in waiting and drove to the stable where they kept the horse and buggy. The satchel containing the money was concealed in a sack of oats. In the evening Dabner took it to the room occupied by Siemsen and himself and counted it. They subsequently spent various sums of this money for clothing and jewelry, the expenditures being stated by Dabner in detail.

The objection to the admission of this confession, and of the statements of Siemsen regarding it, was put upon the ground that the prosecution had failed to establish that the confession was free and voluntary on Siemsen's part, and that, on the contrary, the preliminary proof showed that it was made under duress. The objection was overruled and appellant excepted.

Upon the preliminary showing, which we have set forth with some fullness, it cannot be said, as matter of law, that the trial court erred in admitting in evidence the confession of Dabner, together with the statements of Siemsen regarding it. Undoubtedly, the rule is elementary, even in the absence of constitutional provisions protecting persons accused of crime, that "a confession, in order to be admissible, must be free and voluntary, that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." (3 Russell on Crimes, 6th ed., 478.) As was said by this court in *People* v. *Miller*, 135 Cal. 69, [67 Pac. 13], "before any confession of a defendant can be offered in evidence, it must be shown by the prosecution that it was voluntary, and made without any previous inducement or by reason of any intimidation or threat." The slightest pressure, whether by way of inducement to confess, or threat if confession is withheld, is sufficient to require the exclusion of the confession. Thus, the confession is not admissible if made in response to a statement by one in authority to the prisoner, that "it will be better for him" to make a full disclosure (*People* v. *Barrie*, 49 Cal. 343), or to tell all he knows (*People* v. *Thompson*, 84 Cal. 598, [24 Pac. 384]), or if called forth by a statement of the sheriff that he would do all he could for the prisoner. (*People* v. *Gonzales*, 136 Cal. 666, [69 Pac. 487].) But whether a confession is free and voluntary is a preliminary question addressed to the trial court and to be determined by it (*People* v. *Miller*, 135 Cal. 69, [67 Pac. 13], and a considerable measure of discretion must be allowed that court in determining it. The "admissibility of such evidence so largely depends upon the special circumstances connected with the confession, that it is difficult, if not impossible, to formulate a rule that will comprehend all cases. As the question is necessarily addressed, in the first instance, to the judge, and since his discretion must be controlled by all the attendant circumstances, the courts have wisely forborne to mark with absolute precision the limits of admission and exclusion. (*Hopt* v. *Utah*, 110 U. S. 574, 583, [4 Sup. Ct. 202].)

The testimony above recited shows, on the part of the officers, no express utterance amounting to either a threat or

an inducement. The claim is that Siemsen was placed in circumstances which necessarily operated to take from his actions the free and voluntary character which is required by the rule under consideration. Those circumstances are that he was in custody, charged, or to be charged with a serious crime, and that he was made aware that his co-suspect had made a confession implicating him. It is established law that the mere fact that the confession was made to a police officer while the accused was under arrest, does not necessarily render the confession involuntary. (*Hopt* v. *Utah,* 110 U. S. 574, 583, [4 Sup. Ct. 202] ; *Bram* v. *United States,* 168 U. S. 532, [18 Sup. Ct. 183] ; *People* v. *Devine,* 46 Cal. 46; *People* v. *Miller,* 135 Cal. 69, [67 Pac. 13] ; *People* v. *Walker,* 140 Cal. 156, [73 Pac. 831].) Nor do we think the mere fact that the accused was informed, in the presence of his alleged accomplice, that the latter had confessed, requires the holding that the ensuing confession of this defendant was involuntary. It does not appear that he was, in any way, made to believe that his situation would be better if he confessed, or that it would be worse if he declined to speak. It may well be that a suspect, informed that a co-suspect has confessed, may feel impelled to speak for fear that silence on his part would give rise to inferences against him. Such fear might well be enough to take away from his resulting confession the voluntary character requisite to its admissibility. But it is also possible that he may fully understand that he is not called upon to say anything and that his silence could not be used against him. Here, as was stated by the police officers, the defendant, apparently knowing his rights, declined to say anything without first consulting counsel. Subsequently, without any pressure or suasion, other than a second reading of Dabner's confession, having been brought to bear on him, he decided to admit the truth of Dabner's statement. It cannot be said that the trial court was not justified in finding that this decision on Siemsen's part was voluntary, uninfluenced.by either fear or hope induced by word or act of any of the officers. While the defendant, had, up to that time, been kept in close confinement, he had been placed alone at his own request, and had not been subjected to any indignity or unkind treatment. He had been allowed to communicate with his wife, and would, if he had desired, have been allowed

to see counsel. In this respect the case differs essentially from the "*Sweat Box Case*," 80 Miss. 592, [92 Am. St. Rep. 607, 32 South. 9], and *State* v. *McCullum*, 18 Wash. 394, [51 Pac. 1044], relied on by appellant. In each of these cases it was held that a confession induced by means of keeping the prisoner in a dark cell, or "sweat box," under circumstances leading him to believe that he would be kept there until he did confess, could not be used against him. The fact that Siemsen was confronted with Dabner and made to listen in Dabner's presence to the latter's confession is not of itself sufficient to establish the involuntary character of the appellant's admission of the truth of that confession. In *Bram* v. *United States*, 168 U. S. 532, [18 Sup. Ct. 183], the supreme court of the United States exhaustively reviewed the authorities on the general subject of the admissibility of extra-judicial confessions by persons accused of crime. In the opinion in that case there are some expressions indicating that a confession made by a prisoner immediately upon a statement by a police officer to the effect that an alleged witness had seen him commit the crime is not voluntary. But the facts of that case were very different from those here presented. It appeared that the police officer had stripped the accused of his clothing; and had said to him "If you had an accomplice, say so—do not have the blame of the crime on your own shoulders." That these circumstances were inconsistent with the exercise by the prisoner of a free will, uninfluenced by threat or promise, may well be. The situation is not the same, however, where the prisoner is treated with all the consideration shown to any prisoner, where no word is said to urge him to confess, where by his own declaration he indicates clearly his appreciation of the fact that he is not required to speak, where he has knowledge of his co-defendant's confession before he is told of it by the police officers, and where he has, in effect, adopted that confession and admitted its truth in all material respects before being confronted with the co-defendant, and before making any request to be allowed to see counsel. The fact that Siemsen said he preferred to consult a lawyer before making a statement, and that the police officers continued the interview without giving him an opportunity to obtain legal advice, would, if there had been no confession up to this point, undoubtedly be a circumstance entitled to considerable weight

in determining whether or not the police officers were withholding such advice from him as a means of inducing him, through fear, to assent to Dabner's confession. On the showing here made, however, there was clearly ample ground for the court to conclude that Siemsen's confession was the "spontaneous suggestion of the defendant's own mind, unmoved and uninfluenced by any inducement, promise, threat, or menace by the officer to obtain it." (*People* v. *Ramirez*, 56 Cal. 536, [38 Am. Rep. 73].)

3. After the introduction in evidence of Dabner's confession, assented to by Siemsen, the People offered the testimony of several witnesses to the effect that shortly after the alleged robbery and murder, Siemsen and Dabner had purchased various articles of jewelry and clothing, and had paid cash for the same. The sums so shown to have been expended amounted to more than one thousand dollars. In several instances this testimony was objected to on the ground that it had not been shown that the defendant was, prior to the alleged robbery, without means to make these purchases. That the sudden possession of money, immediately after the commission of a larceny, by one who had before that been impecunious, is admissible as a circumstance in the case (*People* v. *Kelley*, 132 Cal. 430, [64 Pac. 563]), is not disputed. Nor is it questioned that the same rule is applicable here, where, although the charge does not embrace larceny, the proof tends to show that, in the course of committing the crime under investigation, money was taken by the person or persons guilty of the main crime charged. It is urged, however, that before evidence of the possession of money by the defendant can be admitted, a foundation must be laid by showing that such defendant was impecunious before the commission of the alleged crime. It may be questioned whether this objection goes to the admissibility, or merely to the weight, of the evidence. This need not be decided here, however, since the evidence was clearly admissible upon another ground. All of the items of expenditure proven over defendant's objection corresponded, more or less closely, with the amounts which, according to the confession, had been paid by the defendants out of money taken by them from the bank. The evidence in question was relevant and proper for the purpose of corroborating the confession in this particular.

4. It is urged that the district attorney was guilty of misconduct, in that, in the course of his opening statement to the jury, he referred to the confession of Dabner and stated its purport. In view of our conclusion, above expressed, that the confession itself was properly admitted as against the appellant, it was, of course, not improper for the prosecuting officer to state that he would prove it.

No other point is made, and we see no reason for disturbing the verdict.

The judgment and order appealed from are affirmed.

Shaw, J., Angellotti, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.