[Crim. No. 271.   Third Appellate District.—July 28, 1914.]

THE PEOPLE, Appellant, v. GUS PETROS, Respondent.

CRIMINAL LAW—ORDER GRANTING NEW TRIAL—APPEAL—OPINION OF TRIAL COURT AS PART OF RECORD.—Upon an appeal from an order granting a new trial in a criminal prosecution the opinion of the trial court, rendered at the time of the granting of the motion, which sets forth the reasons impelling the conclusion of the court that the verdict was not justified or sustained by the evidence, is no part of the record and cannot be considered in determining the propriety of the order.

ID.—PANDERING—ATTEMPT TO COMMIT—CONFLICT IN EVIDENCE.—In this prosecution for pandering there appears a conflict in the evidence upon the vital question whether the defendant committed any overt act in furtherance of what seems to have been a well-established intention in him to commit the crime charged, and hence the appellate court is required to affirm the order of the trial court granting a new trial on the ground of the insufficiency of the evidence to sustain the verdict of conviction.

ID.—NEW TRIAL—CONFLICTING EVIDENCE—DISCRETION OF TRIAL COURT. The granting or denying of a new trial on the ground that the evidence is insufficient to justify the verdict, where there is a substantial conflict in the evidence, rests so fully in the discretion of the trial court that its action is conclusive upon an appellate court, unless it appears that there has been an abuse of discretion. The action of the trial court, in such a case, is so far a matter within its discretion that its decision, if there is any appreciable conflict in the evidence, is not open to review.

ID.—MOTION FOR NEW TRIAL—AUTHORITY OF TRIAL COURT—PROBATIVE VALUE OF TESTIMONY.—While a trial court will not be allowed to trespass upon the functions of the jury, it is nevertheless invested with a supervisory control over a trial before a jury and is legally authorized to grant a new trial where it entertains a well-founded opinion, or one which appears to be sufficiently well-founded to preclude a reviewing court from declaring it not to be, that the result reached by the jury is not justified by the evidence. And, in determining this question upon a motion for a new trial, the trial court may pass upon the probative value of the testimony submitted in proof of the charge against the accused.

ID.—PANDERING—ATTEMPT TO COMMIT—WHAT CONSTITUTES.—Where a man represents to a woman that he will procure her a position if she will accompany him to a certain city, and thereupon he takes her to a hotel in such city, where they occupy apartments as husband and wife, and in a few days he turns her over to a prostitute to be put in a house of prostitution, he is guilty of an attempt to

commit pandering, notwithstanding he does not personally procure for her a room or house in which to carry on prostitution, and the prostitute, to whom he intrusts her, intends to and does deliver her from him and places her in charge of the authorities for her protection.

Id.—WHEN ATTEMPT AT CRIME IS COMPLETED—INTERVENTION OF CIRCUMSTANCES PREVENTING CONSUMMATION OF OFFENSE.—Under the language of the statute defining pandering, where it is made to appear that the inducement, persuasion, or encouragement, practiced by the accused, has reached the point that its effect would be to cause the female to become an inmate of a house of prostitution but for the intervention of circumstances apart from and independent of his will, the crime of an attempt to commit pandering is accomplished.

Id.—ATTEMPT TO COMMIT CRIME—WHAT CONSTITUTES.—An attempt to commit a crime consists of an intent to commit it, and a direct ineffectual act done toward its commission. To constitute the crime of an attempt to commit a crime, the acts of the defendant must go so far that they will result in the accomplishment of the crime unless frustrated by extraneous circumstances.

APPEAL from an order of the Superior Court of San Joaquin County granting a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Appellant.

Stephen N. Blewett, for Respondent.

HART, J.—The defendant was accused by information of the crime of pandering, as defined by an act of the legislature of 1911 (Stats. 1911, p. 9), and upon being tried on said information was convicted of the crime of an attempt to commit the crime therein charged. (Pen. Code, sec. 1159.)

In due time, the defendant moved for a new trial on the following grounds: "1. . . . 2. . . . 3. That the verdict is contrary to law; 4. That the verdict is contrary to the evidence." The court made an order granting said motion "upon the ground of the insufficiency of the evidence to sustain the verdict."

This appeal is prosecuted by the people from said order.

The statute upon which the information is founded reads as follows:

"Section 1. Any person who shall procure a female inmate for a house of prostitution, or who, by promises, threats, violence, or by any device or scheme, shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution, or shall procure for a female person a place as inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state, or any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade or encourage an inmate of a house of prostitution or any other place in which prostitution is encouraged or allowed to remain therein as such inmate, or any person who shall, by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procure any female person to become an inmate of a house of ill fame, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution, or who shall receive or give, or agree to receive or give, any money or thing of value for procuring, or attempting to procure, any female person to become an inmate of a house of ill fame within this state, or to come into this state or leave this state for the purpose of prostitution, shall be guilty of a felony, to wit: pandering, and upon conviction for an offense under this act shall be punished by imprisonment in the state prison for a period of not less than one year nor more than ten years."

In its charge to the jury, the court declared that "a verdict of guilty of pandering would be unwarranted" under the evidence, but instructed that it was within the legal province of the jury, under the evidence, to find the accused guilty of the crime of an attempt to commit the crime of pandering, if they were convinced by the evidence beyond a reasonable doubt that such an attempt had been made.

Embodied in the brief of counsel for the respondent is the opinion of the trial court, rendered at the time of the granting of the motion, and which sets forth at considerable length the reasons impelling the conclusion of said court that the verdict was not justified or sustained by the evidence. From said opinion it appears that the court is of the view that, although not questioning its verity, the evidence was insufficient, as a matter of law, to uphold a verdict of guilty of the crime of an attempt to commit the crime of pandering, and it

further appears therefrom that it was solely upon that view
of the evidence that the new trial was granted. Doubtless
influenced to a great extent by a consideration of said opinion
and the views therein expressed, the attorney-general devotes
his brief entirely to a discussion of the question whether,
as a matter of law, an attempt to commit the crime of pan-
dering is shown by the evidence, and, concluding that the
trial court has thus betrayed a misapprehension of the scope
and effect of the evidence adduced before the jury, insists
upon a reversal of the order.

But, obviously, the opinion of the trial court setting out
the reasons leading it to make the order from which this
appeal is taken is no part of the record and cannot, therefore,
be considered in reviewing this record. We must be governed
entirely by the order itself and not by the reasons of the trial
court for making it. It will be noted that the order is gen-
eral in its terms, in so far as is concerned the specific ground
upon which it is based, and does not specify any particular
reason leading to the making of it.

The rule is thoroughly settled that "the granting or deny-
ing a new trial on the ground that the evidence is insufficient
to justify the verdict, where there is a substantial conflict in
the evidence, rests so fully in the discretion of the trial court
that its action is conclusive upon this court, unless it appears
that there has been an abuse of discretion." (*Domico* v.
*Casassa*, 101 Cal. 413, [35 Pac. 1024] ; *Warner* v. *Thomas etc.
Works*, 105 Cal. 411, [38 Pac. 960] ; *Edinger* v. *Sigwart*, 13
Cal. App. 667, 676, [110 Pac. 521, 524], and cases therein
cited.) "Indeed, it has repeatedly been said in the cases that
the action of a trial court in granting a new trial upon the
ground of the insufficiency of the evidence to justify the de-
cision 'is so far a matter within its discretion that, if there is
*any appreciable conflict* in the evidence it is not open to re-
view.'" (*Newman* v. *Overland Pac. Ry. Co.*, 132 Cal. 74,
[64 Pac. 110] ; *Otten* v. *Spreckels*, 24 Cal. App. 251, [141 Pac.
224].)

In this case there appears to be a conflict in the evidence
upon the vital question here whether the defendant committed
any overt act in furtherance of what seems to have been a
well-established intention in him to commit the crime charged.

While a trial court will not be allowed to trespass upon the
functions of the jury, it is nevertheless true that it is invested

with a supervisory control over a trial before a jury and is legally authorized to grant a new trial where it entertains a well-founded opinion, or one which appears to be sufficiently well-founded to preclude a reviewing court from declaring it not to be, that the result reached by the jury is not justified by the evidence. And, in determining this question upon a motion for a new trial, the trial court may, of course, pass upon the probative value of the testimony submitted in proof of the charge against the accused. In other words, such court may consider, examine, and scrutinize the testimony by the aid of those tests by which the jury are required to measure the worth and weight of the proofs adduced in substantiation of the charge, and if it thus reaches the conclusion that the jury, to reach its conclusion, must have accorded to such testimony undue weight and credit—that is to say, if it be persuaded by a just and fair consideration of the testimony that it is insufficient to establish guilt beyond a reasonable doubt, and that the jury formed an erroneous judgment on the probative power of the evidence—and, accordingly, in the exercise of the discretion committed to it as to such matters, grants a new trial, the order granting the motion must then be held to stand free from disturbance by a court of review.

For aught that may be ascertained from an examination of the record, now under review, the trial court might have concluded that, although the testimony presented by the people on its face appeared to disclose the guilt of the accused and, if believable, was sufficient to support the verdict returned, the witnesses giving such testimony had so given it as to convince it that they were not telling the truth, and that the jury, in according to the witnesses and their testimony the credit and the weight essential to the support of the conclusion that the defendant was guilty of the crime of which he was convicted, were influenced either by a misconception of the true worth or real evidentiary value of such testimony or by passion or prejudice, superinduced, perhaps, by the sentiment generally prevailing throughout the country against such acts as constitute the foundation of the charge preferred against the defendant. But, whatever might have been the specific reasons persuading the trial court to grant the motion on the ground that the evidence does not justify the verdict, this court is in no position to declare that the action of the court in that

regard involved an abuse of the discretion confided to trial courts in disposing of motions for new trials.

As before stated, however, the opinion of the learned trial judge appears in the brief of counsel for the defendant as a part of the argument advanced by the latter in support of the order appealed from, and, since it thus appears that it is his opinion that the facts brought to light by the evidence, assuming said evidence is credible and believable, do not bring the acts of the defendant as thereby disclosed within the condemnation of the statute under which he was prosecuted, and, in view of a probable retrial of the case, it is thought to be proper to give herein our conception of the legal effect of said evidence—that is, whether it can fairly and reasonably be said to show an attempt to commit the crime charged.

The facts are: The prosecuting witness, Bessie Edwards, first met the defendant early in the month of February, 1914, in the city of San Francisco. She was at that time just approaching her nineteenth birthday, and was employed as a domestic in the city of Oakland. The defendant proposed to her that she accompany him to the city of Stockton, where, he said, he would be able to secure a position for her as a waitress in a restaurant, at which nothing but "soft drinks and black coffee" were served with the meals. The prosecutrix assented to the proposition and, on the second day of February, 1914, went to the city of Stockton in company with the defendant. The defendant took her to a room in a rooming house situated near one of the railroad depots in said city, and there they remained together, occupying the same bed that night. The following day he secured a room in the Dale Hotel, where he registered himself and the young woman as husband and wife. They occupied the room together up to the time of the defendant's arrest, or for a period of five or six days. On two different occasions during this period of time the defendant brought men to the room, introduced them to the prosecutrix and gave her to understand that the purpose of their visits was to have sexual relations with her and for which each would pay her one dollar and fifty cents. Such relations she had with the men referred to and the money so obtained by her she turned over to the defendant in obedience to his demand for it. Prior to having these relations with other men, the defendant, so the prosecutrix said, would arise from bed at a very early hour in the

25 Cal. App.—16

morning, would leave the room and seldom return until late in the day, leaving her alone and without food or means to procure a substantial meal. He would, on his return in the evening, bring her a sandwich. During that time she went out on the streets on but two occasions—on one for the purpose of procuring a few doughnuts at a nearby bakery, and on the other to purchase a cheap waist at a store situated within a few blocks of the Dale. It further was made to appear that, while the couple were rooming at the Dale, he told her of the "Bull Pen," a place in the city of Stockton to which those houses of prostitution which are each occupied by a single prostitute are confined, and said to her that he would have to "break her in," the inference from that statement being that he intended or desired to initiate her into the business of a prostitute.

On the Saturday evening of the week during which the couple occupied the room in said hotel, the defendant and prosecutrix went to the "Union Restaurant" for dinner. There they met a prostitute, known as Teddie Smith, and a male friend of the latter. The defendant introduced the prosecutrix to the Smith woman and her friend, and all four ate their meals at the same table. The defendant gave the prosecutrix some beer, but she drank very little of it, saying that she did not like it. When, however, she would drink a small amount of it, the defendant would immediately fill her glass with more beer. Finishing their meals, the Smith woman remarked that it was time for her to return to her "crib" (a term used to designate a place of prostitution of one or two rooms, and occupied by but one female), whereupon the defendant asked her to take the prosecutrix with her, saying, "I wish you would get her to work tonight, because I have the last dollar in my pocket." Miss Smith then inquired whether the girl had ever "worked" in a "crib," and the defendant immediately replied that she had "worked" in a "parlor house." "I thought she looked green," continued Miss Smith, and I says, 'how old are you?' and he (defendant) said '23.' " The Smith woman then said that she would take the prosecutrix with her to the "crib" and thereupon the two women left the restaurant together and the two men departed in another direction. Miss Smith continued: "Well, I knew she couldn't get work Saturday night, and I knew that she wasn't in the hands she ought to

be; I wanted to get her alone to find out whether she was a sporting girl. So we got outside and I asked her and she owned up to it—she owned up to me; she said she was afraid though she would have to go, or he would kill her; I told her no, he would not; she said she would have to go or he would kill her; I told her no; I says, 'no, girlie, it is an awful life to live'; she said, 'Well, I don't want to do that,' but she says, 'I will have to do it or he would kill me,' I says, 'no, he won't; I will take you and put you in hands you won't get hurt.'" Miss Smith took the prosecutrix to her apartments or "crib," which was one of a number of "cribs" or houses of prostitution constituting the "Bull Pen" before referred to. She telephoned from there to police headquarters and reported the case to the officers, and a policeman was at once dispatched to the "crib" and took charge of the girl.

The above statement of the facts embraces, in substance, the stories as told before the jury by the prosecutrix and Miss Smith.

The theory of the learned trial judge, as indicated by the opinion rendered by him when granting the motion for a new trial in this case, is that the facts as given above disclose nothing more than mere preparation to commit the crime of pandering—that is to say, that, while the evidence shows that the defendant had the intent to commit said crime and was engaged in making preparation to carry out that intent or to consummate the offense, it does not show that he made an attempt to do so; that, to complete the offense of an attempt to commit the crime of pandering, the accused must have attempted to secure a room or a house to be used by the female for the purposes of prostitution.

In support of its conclusion, as above stated, the court cites and relies upon the following cases: *People* v. *Matsicura*, 19 Cal. App. 75, [124 Pac. 882]; *People* v. *Murray*, 14 Cal. 159; *Ex parte Floyd*, 7 Cal. App. 588, [95 Pac. 175]; *Ex parte Turner*, 3 Okl. Crim. 168, [104 Pac. 1071].

We are unable to persuade ourselves that those cases support the conclusion reached by the learned trial judge in the case at bar. In other words, we are of the opinion that the evidence in this case, assuming only for the purposes of this discussion, that it was not for any reason unworthy of credence or belief, goes much further than any of the cases re-

ferred to and shows a clear attempt by the defendant to commit the crime with which he was charged.

"An attempt to commit a crime is compounded of two elements: 1. The intent to commit it, and 2. A direct ineffectual act done towards its commission." (2 Bishop on Criminal Procedure, par 71.) Or, as Wharton, page 268 of the eleventh edition of his work on Criminal Law, defines it: "An attempt is an intended apparent unfinished crime." Of course, as that learned author proceeds to say, ",there must be some appreciable fragment of the crime committed," and if it be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, then the attempt is complete. In other words, "to constitute the crime of an attempt to commit a crime, the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances." (*People* v. *Grubb,* 24 Cal. App. 604, [141 Pac. 1051]; 1 Wharton on Criminal Law, 10th ed., sec. 181; Clark & Marshall's Law of Crime, 2d ed., sec. 123.)

That the evidence in this case clearly shows that the defendant's intention was to place the prosecutrix in a house of prostitution for the purpose of carrying on that business, is not denied. Manifestly, as the cases cited by the trial court in its opinion and above mentioned, say, the mere intention to commit a crime does not of itself constitute an attempt to commit it; nor does the mere preparation to commit the crime, unaccompanied by any overt act, constitute an attempt to commit it. And if the evidence in this case disclosed nothing more than an intention and preparation to commit the crime of pandering, we would be compelled to hold with the trial court that the crime of an attempt to commit said offense was not established. But we think that the evidence clearly shows that the defendant went much further than merely to form the intent to commit the crime charged and to take certain preliminary steps, amounting only to preparation, looking to the execution of such intent.

In the first place, it is to be remarked that the statute, among other things, provides that any person who, by any device or scheme, shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution, is guilty of a felony. It is further to be observed that an examination of the information will disclose that it is in

the language of the statute, and that, among other things, it charges the defendant with having induced, persuaded, and encouraged the prosecutrix to become an inmate of a house of prostitution. It cannot be doubted that, under the language of the statute, where it is made to appear that such inducement, persuasion, or encouragement had reached the point that its effect would have been to cause the female to become an inmate of a house of prostitution but for the intervention of circumstances apart from and independent of the will of the persuader, the crime of an attempt to commit the crime denounced by the statute had been fully accomplished. It seems clear to us that the acts of the defendant had, according to the face value of the evidence, reached that very point. He, indeed, seems to have done all that he could do to induce her to become an inmate of such a house. While it is true that he did not personally procure for her a house or a room to be used by her for the purpose of plying the business of a prostitute (an act which we do not conceive to be indispensably essential to the consummation of the offense in all cases), he nevertheless, evidently having her under his domination and control, turned her over to the custody of a keeper of a house of prostitution, with instructions to put her to "work" at once, saying in effect that his supply of money was about exhausted, and the woman into whose charge she was thus placed, acting upon his persuasions, took her to a house of prostitution. If he had himself taken her to such a house for the purpose of making her an inmate thereof, no one would be found to say that such act would not constitute an attempt to commit the crime of pandering as defined by the statute upon which the information is based. And we are unable to perceive any difference in principle between such an act and the act of the accused in turning the prosecutrix over to the custody of a keeper of a house of prostitution with instructions that the latter place her in such a house to become an inmate thereof for the purpose of carrying on the business of prostitution. What the motive of the woman, Smith, might have been in taking the girl to her house of ill-fame—whether to make her an inmate thereof in compliance with the expressed wish and request of the defendant, or only to secure an opportunity for placing her in the charge of the authorities and thus protecting her against the iniquitous designs of the accused—is immaterial, so far as the de-

fendant himself is concerned. That circumstance did not and could not have the effect of rendering his conduct any the less an attempt to commit the crime of pandering. Indeed, but for the part that was finally played in the matter by Teddie Smith, the prosecutrix would undoubtedly there and then have entered upon the career of a common prostitute as the direct result of the acts of the defendant. That she did not, was due entirely to the will and act of the Smith woman and not to any act or wish of the accused. And it was this most commendable and humane intervention in the malodorous transaction by the fallen woman, Teddie Smith, that constituted the "extraneous circumstances"—circumstances arising independently of the will of the accused—which frustrated or prevented the execution of his purpose to place her in a house of prostitution as an inmate thereof.

As stated, the facts developed in the cases in which the learned trial judge perceives support for the conclusion declared in his opinion are very much different from those of the present case.

In the case of the *People* v. *Matsicura,* 19 Cal. App. 75, [124 Pac. 882], the defendant was convicted of the crime of pandering under the statute in question. The undisputed evidence showed that the defendant was the owner or lessee of a house of prostitution, in Bakersfield, Kern County, and that the prosecutrix, some months prior to the date of the alleged commission of the crime of which the defendant was convicted, occupied a room in said house and there carried on the business of prostitution; that she had left said house and gone to Stockton, where she engaged in said business for a short period, when she sent word by wire to the defendant to either go to Stockton and take her back to Bakersfield or send her a railroad ticket to the latter place. The defendant forwarded a ticket to her, and she arrived at Bakersfield early on the following morning. She immediately repaired to the house of the defendant, who was then still in bed, and awakened him and accompanied him to a restaurant, where they had their breakfast. During the course of the meal she asked the defendant whether her "crib" was ready for her, and he replied, "No, not yet, but after breakfast I will fix it up for you." The defendant was arrested while at breakfast and charged with the crime of pandering, of which he was convicted upon evidence disclosing no other facts than

those above detailed. It will at once be noted that the court in that case was dealing with a verdict of conviction of the crime of pandering itself and not of an attempt to commit that crime. Obviously, the uncontradicted facts utterly failed to establish said crime, but it is not declared in the opinion that a conviction of an attempt to commit it might not have been thereby sustained.

In respect of the facts, we perceive no parallel between the other cases cited by the learned trial judge in his opinion and the case at bar. The evidence in those cases revealed no overt acts by the accused directed toward the commission of the specific crimes charged, but merely disclosed preparation of the means whereby said crimes might have been committed.

We are satisfied that the evidence, as disclosed by the record, if not for any reason unbelievable, is sufficient to establish an attempt on the part of the defendant to commit the crime of pandering as the same is described by the statute upon which the information is founded.

However, for the reasons stated in the outset of this opinion, the order appealed from must be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.