[Crim. No. 355. Fourth Appellate District.—February 4, 1938.]

## THE PEOPLE, Respondent, v. ANSTRUTHER MacDON-ALD, Appellant.

704

Wallace P. Rouse and R. J. Welch, Jr., for Appellant.

U. S. Webb, Attorney-General, Paul D. McCormick, Deputy Attorney-General, Earl Redwine, District Attorney, and William O. Mackey and John G. Gabbert, Deputies District Attorney, for Respondent.

MARKS, J.—By an information filed by the district attorney of Riverside County, defendant was charged in separate counts, with committing four crimes of incest with Marjorie MacDonald, his daughter, by means of sexual intercourse; of two crimes of statutory rape on the person of Marjorie during her seventeenth year, and with contracting an incestuous marriage with Marjorie. He was convicted on all counts. His motion for a new trial was denied and he has appealed from the judgment and from that order. ▇ He has attempted to appeal from an order denying his motion in arrest of judgment, and other orders and rulings of the trial court, none of which are appealable. (Sec. 1237, Penal Code; *People* v. *Jackson, ante,* p. 182 [74 Pac. (2d) 1085].)

▇ After Marjorie was sworn, defendant objected to her testifying against him on the ground that she was his wife. The objection was overruled and she was permitted to testify at length as to her relations with him.

The statutes of California, and Arizona where the marriage took place, prohibit the marriage of a father with his daughter. (Sec. 59, Civ. Code; sec. 2166, Revised Code of Arizona, 1928.) It is conceded that if Marjorie was the daughter of defendant, the attempted marriage was a nullity and she could not be his wife. (*Estate of Gregorson,* 160 Cal. 21 [116 Pac. 60, Ann. Cas. 1912D, 1124, L. R. A. 1916C, 697].) It is argued that in overruling the objection the trial judge ruled that Marjorie was the daughter of defendant and thereby took that most important question of fact away from the jury. During the trial the defendant maintained that Marjorie was not his daughter but was the child of Florence Brode MacDonald and some other man.

· Prior to the time of the objection, the People had introduced much evidence to prove that defendant was the father of Marjorie. Defendant cross-examined Marjorie on *voir*

*dire* and proved that she went through a marriage ceremony with defendant and that the purported marriage had not been dissolved or annulled by decree of court.

Section 2102 of the Code of Civil Procedure provides in part as follows:

"All questions of law, including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes and other writings, and other rules of evidence, are to be decided by the court, and all discussions of law addressed to it."

The question before us is not different from that presented to a trial judge when a confession is offered in evidence and which the defendant maintains was not voluntarily given. In those cases, as in the one before us, a mixed question of law and fact is presented which the trial judge must rule upon before the trial can proceed. The sufficiency of the evidence to show a voluntary confession (here the sufficiency of the evidence to show the paternity of Marjorie) is necessarily involved in a ruling on the objection to the admissibility of evidence. However, the question is again left to the jury and the decision of that body is controlling and need not follow the ruling of the trial judge.

In *People* v. *Lehew*, 209 Cal. 336 [287 Pac. 337], it was said: "Whether a confession is free and voluntary is a preliminary question addressed to the trial court, and a considerable measure of discretion must be allowed that court in determining it. (*People* v. *Connelly*, 195 Cal. 584, 598 [234 Pac. 374]; *People* v. *Castello*, 194 Cal. 595, 599 [229 Pac. 855]; *People* v. *Siemsen*, 153 Cal. 387, 394 [95 Pac. 863]; *People* v. *Wilson*, 79 Cal. App. 709, 713 [250 Pac. 879].) In *People* v. *Siemsen, supra,* it is declared that the 'admissibility of such evidence so largely depends upon special circumstances connected with the confession, that it is difficult, if not impossible, to formulate a rule that will comprehend all cases. As the question is necessarily addressed, in the first instance, to the (trial) judge, and since his discretion must be controlled by all the attendant circumstances, the courts have wisely forborne to mark with absolute precision the limits of admission and exclusion.' . . . A reviewing court cannot say that the trial court committed error in admitting a confession of guilt unless such error appears as a matter of law from the record presented. The trial court is clothed

with considerable discretion in determining whether or not the confession was free and voluntary, and where the evidence is conflicting on the subject, it must be assumed that the testimony concerning a defendant's admissions was properly admitted. (*People* v. *Castello, supra,* at p. 600; *People* v. *Shaffer,* 81 Cal. App. 752, 756, 757 [254 Pac. 666]; *People* v. *Tugwell,* 28 Cal. App. 348 [152 Pac. 740].)''

A similar question was before the court in *People* v. *Glab,* 13 Cal. App. (2d) 528 [57 Pac. (2d) 588, 591]. There the male party to a bigamous marriage was permitted to testify against the female, over her objection. In discussing the question, the court said:

''Upon the authority of the above cited case we hold that the court in the instance before us for consideration, having before it facts showing the purported marriage did not come within the excepted classes of section 61 of the Civil Code, did not commit error in permitting the collateral attack upon the subsequent Steeger marriage. Its conclusion that the second marriage was void and illegal, that the purported marriage between the witness Steeger and appellant Steeger was in fact no marriage at all, that the witness and Clara Steeger were not husband and wife and that he therefore might testify against her unrestricted by the limitations of sections 1881 of the Code of Civil Procedure and 1322 of the Penal Code, followed inescapably. No error appears in the court's ruling.''

The evidence supporting the conclusion that Marjorie was the natural daughter of defendant is overwhelming. Anstruther MacDonald and Florence Brode were married on May 2, 1917. Marjorie was born December 26, 1917, at Randsburg, California, while defendant and her mother were living together as husband and wife. Defendant recognized Marjorie as his daughter and continued to do so for many years. Defendant enlisted in the United States Navy and on August 19, 1918, made an allotment of part of his pay for the support of Florence MacDonald, his wife, and Marjorie MacDonald, his child. On February 14, 1922, Florence sued defendant for divorce and the custody of Marjorie. Defendant, in his verified answer and cross-complaint, alleged that Marjorie was a child of the marriage and sought her custody as her father. In 1930, Florence, the mother, died and Marjorie was sent to defendant. She lived in his

household for some time. Marjorie became involved with the law and apparently became a ward of the juvenile court of Los Angeles County. Defendant, as her father, provided for her support, and in a proceeding testified under oath that he was her father. He wrote numerous letters referring to Marjorie as his daughter. Defendant desired Marjorie to live with him in Indio in Riverside County and in October, 1935, sent a telegram about the transfer in which he referred to Marjorie as his daughter. She joined him in Indio in November, 1935, where he introduced her as his daughter. It would be hard to imagine a case in which a father denied paternity where the evidence of paternity could be more satisfactory or convincing.

 Defendant complains of the modification of one instruction which he proposed, and others refused, to the effect that defendant should be acquitted of the charges of incest and incestuous marriage if the jurors were not satisfied beyond a reasonable doubt that defendant was the natural father of Marjorie. The trial judge several times instructed the jury that defendant could not be found guilty unless the evidence proved his paternity of Marjorie beyond a reasonable doubt. The proposed instructions were properly refused because they were repetitious.

 Defendant maintains that Marjorie was an accomplice and that her testimony was not sufficiently corroborated. That she was an accomplice in at least some of the crimes is admitted. All the crimes charged, except the marriage, occurred in Indio. Marjorie and her father lived together in a small house with one bedroom in which there was but one bed. At one time they went to a hotel and occupied one room together, the defendant entering their names on the hotel register as man and wife. On October 1, 1936, Marjorie gave birth to a son. Defendant on the witness stand admitted he was the father of that child. The corroboration was complete. (*People* v. *Jacobs,* 11 Cal. App. (2d) 1 [52 Pac. (2d) 945].) The admission of the paternity of the son by defendant should have the actual if not the legal effect of a plea of guilty to at least one act of incestuous intercourse.

 There remains but one further question for our consideration; the jurisdiction of a California court to punish defendant for an incestuous marriage which was solemnized in Arizona. Counsel for both parties pass over this phase of the case with the citation of sections 27 and 778a of the Penal

Code and little argument. They are not very helpful to the court on this important question.

It is true it was in Indio that the parties formed the intention of marrying. They boarded a train there and went to Phoenix. They returned to Indio and resumed cohabitation there until Marjorie ran away. This is the only evidence that would tend in any way to give a California court jurisdiction over a prosecution for the incestuous marriage.

It should be here observed that in an incest case there is no section of the Penal Code that would give a California court jurisdiction if that offense was committed in another state, such as the jurisdiction given in a case of theft committed in a foreign jurisdiction where the stolen property is brought into California (secs. 497, 789, Pen. Code), and in a case of bigamous marriage outside the state followed thereafter by cohabitation in this state. (Sec. 1106, Pen. Code.)

■ Incest is thus defined in section 285 of the Penal Code: "Persons being within the degrees of consanguinity within which marriages are declared by law to be incestuous and void, who intermarry with each other, or who commit fornication or adultery with each other, are punishable by imprisonment in the state prison not less than one year nor more than fifty years."

It is at once apparent from the section just quoted that the crime of incest can be committed in either of two ways; first by marriage between those of prohibited degrees of blood relationship, and, second, by sexual intercourse between those so related. Under the first the marriage ceremony completes the offense. Intercourse is not a necessary part of it. Under the second, the intercourse is made the crime. Marriage is no part of it. Under the count of the information we are considering we have only to do with the incestuous marriage in Arizona. Other counts of the information charge incestuous intercourse in Riverside County.

■ Marriage is a civil contract entered into by a male and a female not under such disability as to render the ceremony void. Both in Arizona and in California the marriage must be duly solemnized. Besides the agreement of the parties there must be a license and a ceremony performed by an authorized person before witnesses. The initial step in an effective marriage contract is the application for the license. The parties may agree to marry, may make prepara-

tions to marry, but without a license and a ceremony there is no marriage.

In *People* v. *Wilson*, 86 Cal. App. 160 [260 Pac. 330], it is said: "Generally speaking, it is a fundamental rule of criminal procedure that one who commits a crime is answerable therefor only in the jurisdiction where the crime is committed, and in all criminal prosecutions in the absence of statutory provisions to the contrary, the venue must be laid in such jurisdiction."

The same rule was announced in *State* v. *Volpe*, 113 Conn. 288 [155 Atl. 223, 76 A. L. R. 1083], as follows:

"It is a general rule of universal acceptation that one state or sovereignty cannot enforce the penal laws of another, nor punish offenses committed in another state or sovereignty."

■ While these rules are firmly established and consistently followed, they do not prohibit California from passing laws bringing within its criminal jurisdiction a person who commits, in part, a crime within this state (sec. 27, Pen. Code), or from providing that: "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of such intent, which culminates in the commission of a crime, either within or without this state such person is punishable for such crime in this state in the same manner as if the same had been committed entirely within this state." (Sec. 778a, Pen. Code.)

Section 27 of the Penal Code has been frequently construed. It has been consistently held that where some act is committed in California that is "an essential ingredient" of the crime a conviction may be sustained in this state. (*People* v. *Chapman*, 55 Cal. App. 192 [202 Pac. 126].) See, also, *People* v. *Botkin*, 132 Cal. 231, 232 [64 Pac. 286, 84 Am. St. Rep. 39]; *People* v. *Botkin*, 9 Cal. App. 244 [98 Pac. 861]; *People* v. *Sanson*, 37 Cal. App. 435 [173 Pac. 1107]. In the case of a burglary committed in Oregon, the constituent elements of which crime are "the breaking and entry of the building or structure belonging to another, with intent to commit some crime", it has been held that a conviction in a California court cannot be sustained. (*People* v. *McGowan*, 127 Cal. App. 39 [14 Pac. (2d) 1036].) It also seems to be the rule that under section 778a of the Penal Code, where a crime is consummated in another jurisdiction there must be some overt act in furtherance of the crime committed in California

to give our state courts jurisdiction of the offense. (*People* v. *Harden,* 14 Cal. App. (2d) 489 [58 Pac. (2d) 675].)

New York has a similar statute to our section 27 of the Penal Code. In construing that enactment the Court of Appeals of New York said: ''We think a crime is not committed either wholly or partly in this State, unless some act within this state is so related to the crime that if nothing more had followed, it would have amounted to an attempt.'' (*People* v. *Werblow,* 241 N. Y. 55 [148 N. E. 786].) We have found no California case that has yet adopted the foregoing rule in its entirety.

There seems to be a scarcity of authority on the question before us. However, the old case of *People* v. *Murray,* 14 Cal. 159, would seem to be controlling here.

The Supreme Court there said: ''The evidence in this case entirely fails to sustain the charge against the defendant of an attempt to contract an incestuous marriage with his niece. It only discloses declarations of his determination to contract the marriage, his elopement with the niece for that avowed purpose, and his request to one of the witnesses to go for a magistrate to perform the ceremony. It shows very clearly the intention of the defendant, but something more than mere intention is necessary to constitute the offense charged. Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made. . . . So in the present case, the declarations, and elopement, and request for a magistrate, were preparatory to the marriage; but until the officer was engaged, and the parties stood before him ready to take the vows appropriate to the contract of marriage, it cannot be said, in strictness, that the attempt was made. The attempt contemplated by the statute must be manifest by acts which would end in the consummation of the particular offense, but for the intervention of circumstances independent of the will of the party.''

The Murray case, *supra,* has been cited with approval a number of times. See *Ex parte Floyd,* 7 Cal. App. 588 [95 Pac. 175]; *People* v. *Lanzit,* 70 Cal. App. 498 [233 Pac. 815]; *People* v. *George,* 74 Cal. App. 440 [241 Pac. 97]; *People* v. *Parker,* 74 Cal. App. 540 [241 Pac. 401]; *People* v. *Gilbert,* 86

Cal. App. 8 [260 Pac. 558] ; *People* v. *DiDonato,* 90 Cal. App. 366 [265 Pac. 978] ; *People* v. *O'Bryan,* 132 Cal. App. 496 [23 Pac. (2d) 94] ; *People* v. *Miller,* 2 Cal. (2d) 527 [42 Pac. (2d) 308, 98 A. L. R. 913].

From the foregoing it is our conclusion that the incestuous marriage took place in the state of Arizona and that defendant did not commit any element of that offense or do any overt act in connection therewith in California. It follows that the judgment pronounced upon defendant under the count of the information charging an incestuous marriage must be reversed. We have been assisted in reaching this conclusion by the principles announced in the following cases: *People* v. *Arnstein,* 211 N. Y. 585 [105 N. E. 814] ; *State* v. *Stephens,* 118 Me. 237 [107 Atl. 296] ; *Huntington* v. *Attrill,* 146 U. S. 657 [13 Sup. Ct. 224, 36 L. Ed. 1123] ; *State* v. *McAllister,* 55 W. Va. 97 [63 S. E. 758, 131 Am. St. Rep. 955] ; *State* v. *Ray,* 151 N. C. 710 [66 S. E. 204, 134 Am. St. Rep. 1005, 19 Ann. Cas. 566] ; *Short* v. *Commonwealth,* 243 Ky. 175 [47 S. W. (2d) 1074] ; *People* v. *Tyler,* 7 Mich. 161 [74 Am. Dec. 703] ; *Brown* v. *United States,* 35 App. Cas. D. C. 548 [Ann. Cas. 1912A, 388] ; *Wilson* v. *State,* 16 Okl. Cr. 471 [184 Pac. 603] ; *Jennings* v. *State,* 22 Okl. Cr. 412 [211 Pac. 89] ; *Ex parte Gresham,* 53 Okl. Cr. 425 [12 Pac. (2d) 709].

The portion of the judgment pronounced on defendant under the first, second, third, and fourth counts of the information charging incest by means of sexual intercourse; and under the sixth and seventh counts charging statutory rape; and the order denying defendant's motion for new trial on said counts are, and each of them is affirmed.

The portion of the judgment pronounced upon defendant under the fifth count of the information, charging an incestuous marriage, and the order denying defendant's motion for a new trial thereunder are reversed.

The attempted appeal from the order denying defendant's motion in arrest of judgment, and from the other orders and rulings not specified herein, is dismissed.

Barnard, P. J., concurred.