UNITED STATES v. SUGARMAN.

(District Court, D. Minnesota, Second Division. October 25, 1917.)

1. ARMY AND NAVY ⬅️40—OFFENSES—ATTEMPT TO CAUSE INSUBORDINATION—INDICTMENT.

Under Act June 15, 1917, § 3, providing that whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States, shall be punished, an indictment alleging that defendant, in a county specified, willfully attempted to cause insubordination, etc., in the military forces, by urging, counseling, and advising certain men named not to report when ordered to do so by the military authorities for military service, such named persons being persons who had registered for service in the military forces under Selective Draft Act May 18, 1917, and the rules and regulations promulgated by the President, sufficiently alleged the facts of defendant's offense, though it did not set forth what defendant said in the way of urging, counseling, and advising such refusal of duty, as an indictment is not required to set out the evidence, but only the ultimate facts.

2. ARMY AND NAVY ⬅️40—OFFENSES—"ATTEMPT" TO CAUSE INSUBORDINATION—INDICTMENT.

The indictment was sufficient, though it did not allege defendant's intent, as the offense charged was not that of causing insubordination, etc., but that of attempting to cause insubordination, and an attempt includes and involves intent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Attempt.]

3. CRIMINAL LAW ⬅️304(2)—JUDICIAL NOTICE—HISTORICAL FACTS.

The date of the drawing under the Selective Draft Act is a historical fact, of which the court takes judicial notice without proof.

4. ARMY AND NAVY ⟜40—OFFENSES—ATTEMPTING TO CAUSE INSUBORDINA-
TION—"MILITARY FORCES OF THE UNITED STATES."

   Under Const. art. 1, § 8, authorizing Congress to make rules for the
governing and regulation of the land and naval forces, Act April 22,
1898, c. 187, § 1, 30 Stat. 361 (Comp. St. 1916, § 1714), providing that the
national forces consist of all able-bodied male citizens and persons of
foreign birth who have declared their intention to become citizens between
the ages of 18 and 45, and Act May 18, 1917, designating a class of per-
sons between the ages of 21 and 31 from whom an army should be drawn
for active military service, persons who had registered thereunder and
had received their serial numbers were a part of the "military forces of
the United States," within Act June 15, 1917, § 3, making it an offense to
attempt to cause insubordination, disloyalty, mutiny, or refusal of duty in
the military forces of the United States.

Criminal prosecution by the United States against Abraham L. Su-
garman. On motion by defendant for a directed verdict. Motion de-
nied.

Alfred Jaques, U. S. Atty., of Duluth, Minn., and William Ander-
son, Asst. U. S. Atty., of Minneapolis, Minn.

Louis L. Schwartz and T. E. Latimer, both of Minneapolis, Minn.,
and Seymour Stedman, of Chicago, Ill., for defendant.

BOOTH, District Judge. The motion is a rather broad one, and
the argument has naturally taken a somewhat broad scope. The motion,
I take it, in its present form, practically covers the same ground as
the demurrer that was interposed to the indictment, and the motion to
quash the indictment, and also the more limited motion to direct a
verdict for lack of evidence to go to the jury.

It is insisted by counsel for the defendant, not only that the indict-
ment does not state facts sufficient in law to constitute an offense, but
also that under the evidence as disclosed on the part of the government
a good indictment cannot be drawn under section 3 of the Espionage
Law to cover the facts disclosed. These questions as to whether the
indictment states facts in sufficient form, and whether the facts stated
are sufficient in law, are somewhat intimately connected, and have
been argued more or less together, so that they may be properly treat-
ed more or less together.

[1] The indictment is drawn under section 3 of the so-called Es-
pionage Law (Act June 15, 1917), and, so far as this case is concerned,
that section reads as follows:

   "Whoever, when the United States is at war, shall willfully cause or at-
tempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the
military or naval forces of the United States, * * * shall be punished."

Now, the indictment drawn under that section is substantially as
follows: That on the 24th of July, 1917, the United States being then
and there at war, Abraham L. Sugarman, in the county of Sibley, state
and district of Minnesota, and within the jurisdiction of this court, did
willfully attempt to cause insubordination, disloyalty, mutiny, and re-
fusal of duty in the military forces of the United States, by then and
there urging, counseling, and advising a number of young men (named)
not to report when ordered so to do by the military authorities of the
United States for military service; they, the said young men, being
the persons who had theretofore registered for service in the military

forces of the United States in accordance with the act of Congress of May 18, 1917, and the rules and regulations promulgated by the President. Now, the ordinary tests for sufficiency of an indictment as to form are that it shall be sufficiently definite to acquaint the defendant with what charge he has to meet upon the trial; and also sufficiently definite and certain so that, if he either is convicted or acquitted, he may thereafter plead the judgment in any other prosecution that may be brought against him for the same offense; and, third, that the court may be acquainted with what is charged, so that it may determine whether or not the facts, if they are proven, constitute an offense in law within the statute under which the indictment is drawn.

Now, it seems to me, applying those tests to this indictment, that as to the formal requisites it is sufficient. It acquaints the defendant with the time and place of the offense; it acquaints him with the fact that it is claimed that then and there he attempted to cause insubordination, disloyalty, mutiny, and refusal of duty in the military forces of the United States; and it acquaints him with how it is claimed that was done, by urging certain young men there not to report for military duty, and that these young men were men who had been registered under the act of Congress. It is true the indictment does not set forth what was said by the defendant in the way of urging, counseling, and advising this disloyalty and refusal of duty; but it seems to me that, in the present instance, that would be requiring the indictment to set out evidence, and the indictment, as I understand it, is not required to set out evidence. It is required to set out ultimate facts, and it seems to me that within the tests this indictment does set out ultimate facts. Now, whether the indictment sets out facts which, if true, are sufficient in law to constitute an offense, and whether the evidence that has been introduced here is sufficient to be submitted to a jury to determine whether the offense has been committed, are further questions that are raised by this motion.

[2] It is claimed that there is no allegation in the indictment of any intent on the part of the defendant, and it is true that there is no specific allegation of intent on the part of the defendant. It is alleged that he did "feloniously and willfully attempt to cause insubordination, disloyalty," etc. Now, if the indictment had been for causing, and had alleged that he did certain acts, and then had alleged that he did those acts with intent to produce a certain effect, and that the effect was produced, that would have constituted one offense under this act. But this is the offense of attempting, which in its very nature assumes that the attempt was not consummated into the completion of the full crime. Now, an attempt, in its very nature, includes and involves intent. So that it seems to me that, when the indictment alleged that there was an attempt to do a certain thing, it also, though not in so many words, stated that he intended to do that certain thing. So that it seems to me it was not necessary, in addition to the words used, that there should have been any allegation that in attempting to do a certain thing he was intending to do that certain thing, because the two, under the circumstances, are practically synonymous. Now, it is alleged in the indictment that he attempted to cause insubordination, disloyalty, and refusal of duty. That is in the words of the statute. The indictment goes further, and sets up specifically how that was

attempted to be done, "by counseling and advising" certain young men not to report when ordered to do so by the military authorities—in effect that they were to pay no attention to this duty under the law. Now, the allegations of the indictment, it seems to me, are sufficient in that respect, and the evidence that has been introduced here certainly tends to support the allegations of the indictment, and would, on the face of the record as it now stands, make a case for the jury.

[3] There is a further question raised by this motion, and that is as to the status of these men in whom it is claimed this attempt was made to produce disloyalty and refusal of duty. The indictment alleges that these men had registered. It also alleges that an attempt was made to cause disloyalty and refusal of duty in the military forces of the United States. The evidence shows that the young men in question, named in the indictment, had registered. It also shows that they had received their serial numbers under the Draft Act. The indictment does not allege that to be the case; but the proof shows it, and no point is made that the indictment does not state that particular fact. And, of course, the date of making the drawing is an historical fact, of which the court would take judicial notice without proof.

[4] Now, the defendant claims that these men were not in actual military service, but the government contends that the men were in the military forces of the United States, and that is the most important question that is raised by this motion. I am sorry that I have not had an opportunity myself to investigate more thoroughly this question. It is, I think, a very important question, and, so far as I know, has not yet been passed upon under the present law. The section itself reads:

"Whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States, * * * shall be punished."

It does not use the language "in persons in the military service of the United States." And the question arises whether those two expressions are synonymous—whether the "military forces of the United States" may not be broader in scope than "persons in the actual military service of the United States." This word "forces" is used in a number of places in the statutes of the United States. It is also found in the Constitution of the United States. In section 8 of article 1 of the Constitution of the United States, enumerating the powers of Congress, amongst others, are these:

"To raise and support armies; * * * to provide * * * a navy; to make rules for the government and regulation of the land and naval forces."

Now, whether the words "land and naval forces" there are exactly synonymous with the words "army and navy," is a question that might well bear close investigation. In chapter 187, § 1, 30 Statutes at Large, p. 361 (Comp. St. 1916, § 1714), which was the act providing for the raising of the army for the Spanish-American War, we find this language:

"Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled, that all able-bodied male citizens of the United States, and persons of foreign birth who shall have declared their intention to become citizens of the United States under and in pursuance of the laws thereof, between the ages of eighteen and forty-five years,

are hereby declared to constitute the national forces, and, with such exceptions and under such conditions as may be prescribed by law, shall be liable to perform military duty in the service of the United States."

So far as I am advised, this section has not been repealed. Now, it seems to me there is a clear distinction between the expression "national forces," as used there, and persons in the actual military service of the United States. In the National Defense Act, which was passed in June, 1916, we find this language, in section 111 (Comp. St. 1916, § 3045):

"When Congress shall have authorized the use of the armed land forces of the United States, for any purpose requiring the use of troops in excess of those of the regular army, the President may, under such regulations, including such physical examination, as he may prescribe, draft into the military service of the United States, to serve therein for the period of the war, unless sooner discharged, any or all members of the National Guard and of the National Guard Reserve."

There, again, a distinction is made between the forces of the United States and persons in the actual military service of the United States. Now, as I say, I have not had an opportunity to investigate this question carefully; but I have concluded, from reading these laws, and from considering the purpose of the laws, that the military forces of the United States are, at any particular time, what Congress declares them to be. By the act of April 22, 1898 (30 Stat. p. 361), the national forces were declared to be male persons, citizens and certain others, between the ages of 18 and 45. By the act of May 18, 1917, the Selective Draft Act, Congress designated a class of persons between the ages of 21 and 31 from whom should be drawn an army for active military service. Now, registration was the first step in the organizing of the army, the first step in bringing this class of men, or certain members of it, into active military service, and the drawing of the numbers at Washington, on July 20th, was a second step, and other steps, of course, would be those taken by the local boards and the district boards, until finally a man would either be excused or rejected, or become a member of the army in active military service.

Considering, therefore, the broad purposes of this act of May 18, 1917, considering the evils that were intended to be met by section 3 thereof, considering the language of the section, I am of opinion that the words "military forces" therein should be given a broad, rather than a narrow, meaning, and should be held to mean, not merely the men that are in active military service, but also men who had registered and had received their serial numbers from Washington, and that is as far as is necessary to hold in this particular case. Now, if that construction is the proper one, then the indictment in that respect is sufficient, inasmuch as these men named in the indictment were within the class of persons constituting "the military forces of the United States" at the time and place in question. And the evidence supports the allegation of the indictment that these men named had in fact registered, and also shows that they had in fact received their serial numbers.

It seems to me, therefore, under the circumstances, that the indictment is sufficient, and that the evidence is of such character and amount as requires the submission of the case to the jury. Therefore the motion for a directed verdict will be denied.