STATE OF IOWA, Appellee, v. GEORGE WESTERN, Appellant.

No. 40333.

746

June 23, 1930.

*Higbee & McEniry*, for appellant.

*John Fletcher*, Attorney-general, and *Neill Garrett*, Assistant Attorney-general, for appellee.

Grimm, J.—On September 3, 1929, the grand jury of Union County, Iowa, returned an indictment against the defendant, George Western, accusing him of the crime of assault with intent to commit rape on the person of Madge Jones, a female child under the age of 16 years. The question of the sufficiency of the indictment is not before us. The defendant is the son of Charles. Western, a farmer, and, at the time of the happening of the events covered by the indictment, was living with his father, on his father's farm. The elder Western owned not only the farm on which he was living, but another farm on the north side of the road, on which was a house, some 25 or 30 rods east of the elder Western's home, and in this house the Joneses were living. There was a complete set of farm buildings on each farm. The prosecutrix is the daughter of Jesse Jones and Emma Jones, his wife. She was 8 years old at the time of the occurrence, and the defendant was either 24 or 25. The Joneses had been employed by Mr. Western, in different capacities, at different time;, for 16 or 17 years. They came to the Western farm, where they were living at the time of this trouble, on the 3d day of March, 1929.

On the day of the claimed assault, there was a sweet-corn patch and a tomato patch immediately northwest of the house in which the Joneses were living. The corn rows ran north and south. The tomato patch was west of the corn, and there was corn between the tomato patch and the highway on the south. Mrs. Jones testified that, on the day of the alleged assault, she

saw the defendant going through the northwest gate at the Jones's premises between 2:30 and 3:00 o'clock in the afternoon. Mrs. Jones was sitting in the window of her home, fixing Madge's bloomers. It appears that Madge, at that time, had no bloomers on. Mrs. Jones testified:

"Madge was there, and wanted to go to the tomato patch, when she saw George coming. I said, 'Well, you can go.' At the time she went out, she had her dress and slippers on,—no underclothes at all. Madge was gone about 10 or 15 minutes; I saw her go through the garden gate, climb over the other garden gate, and go toward the cornfield. When I last saw George Western, he was crawling over the fence, coming out of the tomato patch. Q. When did you last see him, prior to the time you saw your daughter going into the tomato patch? A. He was just opening the gate into the cornfield."

The claim is that the assault took place in the cornfield just adjacent to the tomato patch.

It is undisputed that the girl (prosecutrix) brought the tomatoes which she went out to get, to the house in her dress, held up to hold them. It appears that she testified before the examining magistrate that she picked the tomatoes after she had been, as she claims, abused by the defendant.

It appears that Mrs. Jones, the mother, had learned by a telephone message from a sister of the defendant's that he was to pick some sweet corn that afternoon in the patch described. When she saw him coming towards the place, she knew he was coming to pick the sweet corn. The mother testified that the girl was bleeding when she came to the house. The county attorney had her examined by a physician on the 19th of August, two days after the alleged assault. He reported that he was unable to find anything whatever indicative of any rape or attempt to commit rape. He found no wounds or scars or injuries of any kind or character. He testified, among other things:

"There was nothing disclosed by my examination which would in any way tend to show that an assault had been made upon her [the prosecutrix]."

I. The defendant argues many alleged errors in the trial, but we deem it unnecessary to discuss more than one of the

points raised. The defendant claims that the court erred in giving Instructions Nos. 4 and 5.

The indictment in this case accuses the defendant "of an assault with intent to commit rape, and charged that the said George Western, on or about the 17th day of August, 1929, assaulted Madge Jones, a female child under the age of 16, with intent to commit rape, in the county and state aforesaid." The exact language of that portion of the statute (Section 12968, Code of 1927), which defines the crime is as follows: "If any person assault a female with intent to commit a rape."

The material portions of Instructions Nos. 4 and 5 are as follows:

"You are instructed that, before the defendant can be convicted of the crime of assault with intent to commit rape, the State must prove beyond a reasonable doubt the following essentials:

"First. That the defendant made an assault upon Madge Jones, a female child under the age of 16 years.

"Second. That such assault was made by him with the intent to have *or attempt to have* sexual intercourse with her." (Writer's italics.)

Said Section 12968 is, in the matter of its punishment, one of the drastic statutes in the criminal code of Iowa. Manifestly, the legislature intended to severely punish an offender convicted of this offense. What constitutes the offense thus so severely condemned? The language of the statute is plain and unambiguous. "Assault a female with intent to commit a rape," is the expression. This carries the necessary implication that, at the time the assault was made, the defendant had in mind the full determination, not simply to ascertain whether he could have sexual intercourse with the female, not simply to ascertain how troublesome it might be to have sexual intercourse with the female, but to commit rape. The act condemned is not susceptible of being divided into degrees. The described condition of mind of the defendant—the intent of the defendant—is definitely set forth as an intent to commit the act; not an intent to *attempt to commit the act*; not anything else less than the intent to actually commit the crime. Under these circumstances, can it be said that the instruction given by the court is justifiable? Can the

jury be permitted to conclude that, if the defendant assaulted the prosecutrix with, for instance, the thought that if, by a slight struggle, or a struggle and some persuasion, or by persuasion alone, he might accomplish his purpose, under those circumtances he could be found guilty of the crime defined in the statutes? The statute contains no words having any relation whatever to an assault with intent to attempt to commit rape. The statute definitely describes, in plain and unmistakable language, what must have been the intent of the defendant at the time the assault was made, and that intent must not in any sense fall short of an intent to commit the act. A mere intent to attempt to commit the act is not covered by the statute. There is no such crime specified in the Code of Iowa. The legislature has not defined an assault upon a female with an intent to attempt to have sexual intercourse as a crime. Such an act is not defined by the statutes as rape.

Thoughtful consideration of this question clearly shows the dangers which might easily follow from the said instructions given by the court. First of all, it leaves wholly to the imagination and speculation of each individual juror what constitutes an *attempt to commit rape*. One juror might think that the mere grasping of the hand of a female of tender years might constitute an attempt to commit rape. Numerous illustrations might be given.

We are dealing with a criminal statute, which must be strictly construed. It definitely limits the assault which is punishable under Section 12968 to one which is made with intent to commit a rape,—not with intent to attempt to commit a rape, not with intent to tease or attempt to persuade a female child of tender years to consent to sexual intercourse,—but assault with intent to commit a rape.

The distinguished attorney-general and his very capable and efficient assistant have not cited us any cases in which any court has held that the intent to "attempt to have sexual intercourse" may be written into and included in a criminal statute which provides only for an assault with an intent to commit a rape, or, as in this case, an assault with intent to have sexual intercourse with a minor under legal age. The cases which have been cited are not in point, and render no aid in determining the question. They give definitions of "attempt." We are dealing with the

definition of "intent;" we are not troubled for a definition of an "attempt." The law very properly recognized the importance of the purpose or intent with which an act is done. This is clearly illustrated by the statutes relating to and providing punishment for various crimes, as, for illustration, larceny from a building. Section 12994 defines burglary. Section 12995 provides:

"If such offender, at the time of committing such burglary, is armed with a dangerous weapon, or so arm himself after having entered such dwelling house, * * * or has any confederate present aiding and abetting in such burglary, he shall be imprisoned in the penitentiary for life or any term of years."

Under Section 12996, the penalty for burglary other than those above described is imprisonment in the penitentiary not exceeding 20 years. The statutes immediately following provide that burglary committed by explosives and similar methods may be punished by imprisonment in the penitentiary for not more than 40 years. In other words, the legislature considers the intent or determination with which an act is committed, and provides punishment accordingly. It is reasoned that, if a burglary is committed by a person who is armed, he has a malicious intent more dangerous to society than a burglary committed by an unarmed man. Applying this thought to the case at bar, we think that the legislature clearly intended by Section 12968 to include only cases where the defendant made the assault with the intent then and there to commit the rape,—not simply an assault with the intent to attempt (whatever that may mean) to commit the rape.

Moreover, the court, after injecting this additional language into the statute, did not attempt to explain to the jury what is meant by an "attempt to commit rape." This was left entirely to the whims and fancies of an uninstructed jury. The instructions in question cast an additional and unwarranted burden on the defendant, to his prejudice. The case is—*Reversed.*

EVANS, FAVILLE, ALBERT, and WAGNER, JJ., concur.

KINDIG, J. (dissenting).—I am unable to agree with the majority's construction of and conclusion with reference to the dis-

trict court's instructions known in the opinion as Nos. 4 and 5. Those instructions, so far as material, are:

"You are instructed that, before the defendant can be convicted of the crime of assault with intent to commit rape, the State must prove beyond a reasonable doubt the following essentials:

"1. That the defendant made an assault upon Madge Jones, a female child under the age of 16 years.

"2. That such assault was made by him with the intent to have *or attempt to have* [the italics are ours] sexual intercourse with her."

There is nothing in the instructions to indicate, as the majority declare, that the judge intended to say that the defendant could be convicted if the assault was "made by him with intent to *attempt*" (italics are ours) to commit the act. No such language appears in the instructions. What the district court said was that the defendant could be convicted if he made an assault: First, with the intent, or second, with the attempt, to have sexual intercourse with the prosecutrix. If the defendant, then, made the assault with an intent to commit the illegal act, he is guilty. Likewise, he is guilty if he made such assault with the attempt to commit the illegal act. Under the court's instructions, he is guilty if he intended or attempted to commit the act, under the assault. The statute uses the word "intent." Consequently, there is but one proposition to decide, and that is whether intent to commit is covered by the *attempt* to commit. In other words, does an assault with an intent to commit the act mean the same thing as an assault with an attempt to commit the act? Error does not appear if an attempt to commit the act includes an intent to commit it. Even though attempt and intent, as here used, are not synonymous, yet there need not be a reversal if attempt includes intent, because in such event the defendant in no way would be prejudiced by the instructions: that is to say, if "attempt" signifies more than "intent," there was no harm done the defendant if the word "attempt" includes "intent."

It is my opinion that an attempt includes an intent, under the circumstances. An intent, however, might not include an attempt. A man might intend to commit rape, but never actually attempt to do so. But if he attempted to commit the crime,

he necessarily intended to do so; for, if he attempted the act, and was in no way prevented, he would have consummated it. Hence, if he actually attempted, he intended, because without the intent there would never have been the attempt. Attempt includes the intent, plus action. The assault with intent is something less than an assault with an attempt, because in the attempt there must be an effort to accomplish, in addition to the intent to do so. So, there would be no attempt without an intent. Before a man starts to put his thought into execution, there must be a will to prompt the action. Resultantly, the use of the word "attempt" in the instructions included "intent," and therefore in no way prejudiced the defendant. The jury could not have been misled.

This conclusion is borne out by the definition of "attempt" set forth in Webster's New International Dictionary. Furthermore, I am not alone in my opinion in this regard, because this and many other courts have held that an "attempt," used in an indictment or definition of certain crimes, must of necessity include "intent." For convenience, excerpts from the opinions of those courts are here set forth:

"* * * 'attempt' is an act tending toward the accomplishment of a purpose which exceeds a mere intent or design, but falls short of the execution of it. * * * It implies an intent formed, and also an endeavor to commit the offense. * * * 'An attempt' is any intent to do a particular thing with an act falling short of the thing intended. When we say a man attempted to do a thing, we mean that he intended to do specifically it, and proceeded a certain way in the doing." *Flower v. Continental Cas. Co.*, 140 Iowa 510, on page 512.

See, also, *State v. Lewis*, 173 Iowa 643.

"The authorities seem to be uniform that, where an act is done with the intent to commit a crime, and tending, but failing, to effect its commission, is an attempt to commit the ultimate crime * * * ." *Shipp v. State*, 81 Tex. Cr. 328, 332 (196 S. W. 840, 843).

"What acts will constitute an 'attempt' to commit a crime is often difficult of determination. * * * Generally, there must be an intent to commit a crime, coupled with an overt act ap-

parently adapted to effect the intent, carried beyond mere preparation, but falling short of execution of the ultimate design." *Gustine v. State,* 86 Fla. 24, 26 (97 So. 207, 208).

"An attempt to commit a crime is generally held to be any overt act done towards its commission with an intent to commit the offense, but because of some interference, the accused is prevented from carrying out the intent which would have resulted in the commission of the crime." *State v. Rooney,* 118 Kan. 618 (236 Pac. 826).

"The rule relied upon is stated thus in 8 R. C. L., p. 277, Section 294: 'An indictable attempt, therefore, consists of two important elements: First, an intent to commit the crime; and, second, a direct ineffectual act done towards its commission.' " *State v. Harvey,* 119 Ore. 512 (249 Pac. 172).

"To define the word of the second section, 'attempt:' It is an act done with intent to commit a crime." *State v. Harwick,* 133 La. 545 (63 So. 166).

"It is claimed that there is no allegation in the indictment of any intent on the part of the defendant * * *. It is alleged that he did 'feloniously and willfully attempt * * *.' Now, an attempt, in its very nature, includes and involves intent." *United States v. Sugarman,* 245 Fed. 604.

" 'Attempt' itself, as used in the information [the one involved in that case], imports: (1) The intent to commit the crime; and (2) a direct, ineffectual act done towards its commission." *State v. Crawford,* 21 Ariz. 501 (190 Pac. 422).

"In 1 Words and Phrases, second series, page 358, it is said: 'The word "attempt" is more comprehensive than the word "intent," implying both the purpose and an actual effort to carry that purpose into execution. * * * The only distinction between an "intent" and an "attempt" to do a thing is that the former implies purpose only, while the latter implies both the purpose and an actual effort to carry that purpose into execution; and, since the word "attempt" embraces the full meaning of "intent," with something more, it is not impossible that the courts may hold it to be an admissible substitute in an indictment.' " *Cirul v. State,* 83 Tex. Cr. 8, 10 (200 S. W. 1088, 1089).

"An attempt to commit a crime is composed of two elements. (1) The intent to commit it; and (2) a direct, ineffectual act

754

done towards its commission." *Andrews v. Commonwealth*, 135 Va. 451 (115 S. E. 558).

. "An attempt to commit a crime is an act done with intent to commit it beyond mere preparation, but falling short of its actual commission." *State v. Schwarzbach*, 84 N. J. Law 268 (86 Atl. 423).

For similar pronouncements, see *People v. Werblow*, 241 N. Y. 55 (148 N. E. 786); *State v. Huber*, 38 Nev. 253 (148 Pac. 562); *People v. Petros*, 25 Cal. App. 236 (143 Pac. 246); *State v. Thompson*, 118 Kan. 256 (234 Pac. 980); *Smith v. State*, 72 Neb. 345 (100 N. W. 806); *Miller v. State*, 130 Miss. 730 (95 So. 83); *State v. Thomason*, 23 Okla. Cr. 104 (212 Pac. 1026).

Thus it appears by the great weight of authority that "attempt" includes "intent;" and where intent is essential for the commission of a crime the use of the word "attempt" in describing the same is sufficient, for the reason that attempt includes intent.

Because of the reasons above suggested, I respectfully dissent from the majority opinion.

MORLING, C. J., and STEVENS and DE GRAFF, JJ., join in dissent.