JUAN ANTONIO CORRETJER, Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, BAYAMÓN SECTION, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. 14. Argued June 5, 1951.—Decided July 16, 1951.

*Rafael Pérez Marchand* and *Santos P. Amadeo* for petitioner. *Víctor Gutiérrez Franqui, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for intervener, plaintiff in the main action.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The District Attorney of Bayamón filed in the Municipal

Court of Puerto Rico, Río Piedras Section, an information against Juan Antonio Corretjer for a violation of § 47 of the Penal Code,[1] in connection with § 359 of the same Code.[2] He alleged substantially therein that at a time when Puerto Rico was in a state of alarm because of the events which took place on October 30, 1950, when members of the Nationalist group attacked the official residence of the Governor of Puerto Rico, with the intent to assassinate the Governor, and within the following 72 hours members of the same group attacked police stations, burned houses, opened fire on hospitals and attempted to assassinate President Truman, then and there, unlawfully, wilfully and maliciously and in front of the police station of Guaynabo, where a group of persons had gathered, Corretjer counseled and solicited said persons to commit the offense of riot, all of them attacking the police station of Guaynabo, and to use force and violence, saying in a loud voice and addressing the crowd gathered there that "in Guaynabo it's going to be worse than in Jayuya and Utuado, and this station must be attacked in order to put an end to all outrages."

The defendant demurred to said information on the ground that it failed to state facts to constitute a cause of action and that in the light of § § 47 and 359 of the Penal Code the facts denounced do not constitute a crime. The demurrer was overruled and the trial held, whereupon said court convicted the defendant and sentenced him to six months in jail. He appealed to the District Court of Puerto

---

[1] Section 47 of the Penal Code provides:

"Whenever an act is declared a misdemeanor, and no punishment for counseling or aiding in the commission of such act is expressly prescribed by law, every person who counsels or aids another in the commission of such act is guilty of a misdemeanor."

[2] Section 359 of the Penal Code recites:

"Any use of force or violence, disturbing the public peace or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot."

Rico, Bayamón Section, and the aforesaid demurrer having been renewed, it was again overruled. The case was heard *de novo* in the District Court which, after hearing oral evidence of the People as well as of the defense, found the petitioner guilty as charged and sentenced him to the same penalty. In order to review said judgment, we issued a writ of certiorari authorized under Act No. 172 of May 4, 1949 (Sess. Laws, p. 546).

 In the first of the two fundamental issues raised, the petitioner alleges that the lower court erred in holding (*a*) that notwithstanding §§ 5[3] and 10[4] of our Penal Code the information filed against him determines facts constituting a public offense, and (*b*) that pursuant to §§ 47 and 359 of said Code the offense of "counseling a riot" with which he is charged, is punishable.

At the beginning of the discussion of said alleged errors the petitioner admits that the question of law raised has already been decided by this Court against his contention, in *The People* v. *Dessús et al.*, 12 P.R.R. 330; *People* v. *Pillot García*, 26 P.R.R. 492, and in modified form in *People* v. *Echavarría*, 29 P.R.R. 824. We shall now examine briefly the holdings of said cases:

---

[3] Section 5 of the Penal Code provides that:

"No person shall be arrested for any crime or offense unless such crime or offense is expressly declared in this Code, except for crimes and offenses against the laws of the United States applicable to Puerto Rico and the enactments of the Legislative Assembly of Puerto Rico and laws enacted by Congress of the United States for Puerto Rico."

[4] Section 10 of our Penal Code provides that:

"A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it and to which is annexed, upon conviction, either of the following punishments:

First.—Death; (The death penalty was repealed in Puerto Rico by Act No. 42 of 1929, p. 232)

Second.—Imprisonment;

Third.—Fine;

Fourth.—Removal from office; or,

Fifth.—Disqualification to hold and enjoy any office of honor, trust or profit."

. In the case of Dessús, decided in 1907, Luis Felipe Dessús and another were accused, prosecuted and convicted of the offense of counseling a riot, by the publication in the paper "Daily Rumor" of an article headed with the words "Head for Head! Life for Life!" The defendants contended, among other things, that under §§ 47 and 359 of the Penal Code the judgment of conviction could not be sustained unless a riot followed as a direct consequence of the counsel given in the article published by them. In deciding the issue, this Court, through Mr. Justice MacLeary, stated:

"We never speak of a man counseling another in doing any act, but of counseling, or advising, or inciting, or persuading, or soliciting another person to do some act, or to refrain from so doing. *The counseling is completed before the act is begun; the advice is entirely distinct from the act which is the subject of the counsel.* Not so with *aiding.* Aid is rendered in the doing of an act or in the commission of a misdemeanor or a crime . . . Any contention that the information is insufficient must be based on the view that the crime or offense of inciting anyone to commit a misdemeanor is not complete unless the misdemeanor is actually committed as a consequence of the advice or counsel given. Such a proposition, in my view, is contrary to the almost uniform current of decisions as found in the numerous volumes of opinions emanating from the American courts." (Italics ours.)

And after examining a number of cases decided in the continent, the court concluded that: "*Under the statute no act, criminal or otherwise, was needed to follow the counsel given*" and that "*The offense was complete, on the publication of the incendiary article, without any subsequent act on the part of another person following the advice.*" (Italics ours.) Mr. Chief Justice Quiñones and Mr. Justice Figueras concurred in the lengthy opinion delivered by Mr. Justice MacLeary. Mr. Justice Hernández and Mr. Justice Wolf dissented, the latter writing a dissenting opinion.

Years went by and in 1918 the case of Pillot García, *supra,* came before this Court. In a brief opinion delivered

by Mr. Justice Hutchison, after copying the information, it was merely stated that: "The contention is not *res nova* in this court and we find nothing in the argument of appellant to justify a departure from the doctrine of *People* v. *Dessús*, 12 P.R.R. 330." Mr. Justice del Toro and Mr. Justice Aldrey concurred and once more Mr. Justice Hernández and Mr. Justice Wolf dissented.[5]

Three years later this Court had before it *People* v. *Echavarría, supra,* in which Echavarría was charged with a violation of § 47 of the Penal Code, in connection with § 359 of the same Code. The opinion was delivered by Mr. Justice Del Toro, at that time an Associate Justice, and was based on the fact that *"the act of counseling is sufficient and it is not necessary to allege or prove that the offense counseled was actually committed."* It was stated forthwith that *". . . in order that a mere counseling may constitute an offense, it must be done in such a manner that it carries with it the force of the crime; the perversity of the offense, and that it be capable of inciting other persons to act."* (Italics ours.) And it was concluded that "That was a condition clearly apparent in the *Dessús* and *Pillot* cases . . . but it is not so shown in the case now submitted to our consideration."[6] Mr. Justice Aldrey and Mr. Justice Hutchison concurred in said opinion and Mr. Chief Justice Hernández and Mr. Justice Wolf concurred in the judgment.

---

[5] As noted, the Court had three new Justices and the three were in agreement with the view previously set forth in the *Dessús* case.

[6] The essence of the statements made by Echavarría follows:

"Comrades, if on election day, November 2, 1920, by any chance Luis Texidor and others should attempt to betray us by stealing the tickets from us and causing us to lose the election, we will take to the street and defend it by force of arms. . . ."

It was concluded that "from a careful reading . . . of the words alleged to have been uttered by the defendant, it is necessary to conclude that none of them constitute a direct counsel to other persons." The legal principle already established was once more ratified, but the attendant *factual circumstances* moved the Court to reverse the judgment and acquit the defendant.

Thus, ever since 1907 and in the only three cases which for an offense similar to the one involved here have been before its consideration, this Court has held by a majority of its judges that, construing § 47 of our Penal Code in connection with § 359 of that same Code, the offense of counseling a riot exists in this jurisdiction and that, where the advice to commit said crime is involved, the mere counseling is sufficient for such an offense to exist, it not being necessary to allege and prove that the crime counseled was committed.

 We agree with the petitioner that Common Law Crimes do not exist in Puerto Rico and that in harmony with the provisions of § § 5 and 10 of our Penal Code, only statutory offenses exist in this Island. We also agree that since our Penal Code was taken from the State of California, it was adopted with the construction ascribed thereto by the Supreme Court of that State on the date of our adoption, as well as that the subsequent decisions of said Supreme Court in connection with the aforesaid Code have a persuasive force in this Court. However, although the Supreme Court of California decided, as the petitioner contends, that the mere solicitation was not punished under the Penal Code in said State, we notice that all the cases he cites involve felonies.[7] Our Penal Code was approved in 1902 and although all, save one, of the cases listed in footnote 7 were decided prior to that year, they are not applicable to the case at bar. This is so because § 47 of our Penal Code specifically refers to every person who counsels or aids another in the commission of an act declared a misdemeanor, and the California cases involve informations for felonies.

The petitioner maintains that it was not until 1929 that by express legislative disposition the offense of soliciting the

---

[7] *People* v. *Wilson*, 119 Cal. 384 (1897); *People* v. *Squires*, 99 Cal. 327 (1893); *People* v. *Gleason*, 99 *Cal.* 359 (1893); *Ex parte Floyd*, 7 Cal. App. 588 (1908).

commission of a crime was created in the State of California.[8] We do not agree. The fact that a statute of the nature indicated in footnote 8 was enacted in the State of California does not mean, in our judgment, that such crime did not exist in said state, pursuant to § 659 of its Penal Code, when the commission of a misdemeanor was counseled there. We have not found a single case to the contrary.

The petitioner also lays great stress upon the statements of the Second Appellate District Court of California in *Schenck* v. *Hirshfeld*, 22 Cal. App. 709 (1913). That is, however, a civil case wherein, as disclosed by the opinion, the plaintiffs and one Coyne wagered $500 upon the outcome of an election. Defendant acted as the stakeholder. After the election had been held and the result declared, a proceeding in contest of the election was instituted. Before the money involved had been paid over to the winner, the plaintiffs notified the stakeholder in writing that they repudiated the wager and that they demanded the return of the $500. The stakeholder refused and consequently suit was brought to recover said sum. In its opinion affirming the judgment of the lower court which sustained a demurrer to the complaint, the court stated that a contract of wager is unlawful when it is made a penal offense under the law; that § 60 of the Penal Code of California punishes wagers such as the one involved in that case and that as provided by § 659 of the same Penal Code, [9] "every person *who aids another in*

---

[8] See § 653 (*f*) of the Penal Code of California which reads as follows:

"Every person who solicits another to offer or accept or join in the offer or acceptance of a bribe, or to commit or join in the commission of murder, robbery, burglary, grand theft, receiving stolen property, extortion, rape by force and violence, perjury, subornation of perjury, forgery, or kidnapping, is punishable by imprisonment in the county jail not longer than one year or in the state prison not longer than five years, or by fine of not more than five thousand dollars. Such offense must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances."

[9] Section 659 of the Penal Code of California is equivalent to § 47 of our Penal Code.

*the commission of a misdemeanor* is also guilty with the principal offender." (Italics ours.) The foregoing is in harmony with the holding of this Court ever since 1907 in *People* v. *Dessús, supra*, in which, as will be remembered, it was said that "The counseling is completed before the act is begun; the advice is entirely distinct from the act which is the subject of the counsel. Not so with *aiding*. *Aid is rendered in the doing of an act or in the commission of a misdemeanor or a crime."* (Italics ours.) In other words, six years before *Schenck* v. *Hirshfeld, supra*, was decided, this Court had acknowledged that when the act of aiding in the commission of a crime is involved, it is necessary that the offense aided be actually committed, but not so where the act of counseling to commit a crime is involved, it being sufficient in the latter case only that the commission of the crime be counseled.

We have minutely and with the utmost care examined the question involved here. This examination leads us to the conclusion that we must ratify the view set forth by a majority of this Court in the above-mentioned cases of Dessús, Pillot and Echavarría. In addition to the convincing arguments expounded in those cases, we notice that § 47 of our Penal Code appears in Title III of the Code, under the heading "Of Parties to Crime." Section 36, under that same Title, [10] specifies who are the principals in a crime and indicates, among other things, that "All persons . . . [who] have advised and encouraged its commission . . . are principals in any crime so committed." Since said Section re-

---

[10] Section 36 reads:

"All persons concerned in the commission of a crime whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, are principals in any crime so committed."

quires that in order for a person to be considered the principal or author, the offense must be actually committed, the lawmaker would have done a futile thing indeed if § 47 also required that the crime be actually committed, even in the case of merely counseling another person to commit an act constituting a crime. On the other hand, § 47 is together with those Sections which involve attempts, that is, where the person has attempted to commit an offense and failed. Therefore, it could be said *a fortiori* that the lawmaker's intent in placing § 47 there was to punish the counseling to commit an offense, without the offense counseled having been committed. Consequently, the question raised by the petitioner under the first two assignments of error is groundless.

■■ The second question he raises is that the lower court erred in finding him guilty on the testimony of Lt. José A. López Vélez alone, when the latter at no time testified that there had been a disturbance of the peace in Guaynabo, much less a riot, as a consequence of the conduct with which the defendant is charged in the information. Briefly, this witness's testimony was to the effect that on October 31, 1950 he was stationed in the town of Guaynabo and had staked out his men in front of police headquarters, armed with carbines, while the town was in a state of alarm because of certain attack on police stations; that about half past three in the morning he received a message to the effect that a group of persons were talking of attacking headquarters; that together with two or three policemen he then went to the place where those persons were and as they approached, said persons started shooting at them, and they fired back; that as it was rumored that those persons had their weapons in Corretjer's club, they decided to open up said club and upon opening it they found no weapons, but did seize certain subversive material of the Nationalist Party and certain documents with regard to Russia and to the Ponce massacre; that about six o'clock in the morning he saw Corretjer coming towards headquarters, followed by a large

number of persons; that when the latter were about thirty or thirty-five meters from headquarters, the armed policemen headed by witness stopped them but as Corretjer then informed the police that he wanted to speak to the witness, the policemen let him pass; that Corretjer asked for permission to enter headquarters and from the porch the witness asked Corretjer to state what he wanted, whereupon Corretjer demanded from the witness to inform him what had happened that the Nationalist flag in his club had been ordered down and the American flag raised instead; that he answered Corretjer that he had done that; that Corretjer became angry and said that "it was an abuse of the police, that he was going to get his people together to put an end to this outrageous government"; that "this is an abuse of the police and that this government must be brought to an end somehow and that the same thing that had been done in Arecibo, Utuado, and Jayuya had to be done in Guaynabo"; that Corretjer made these statements to the group in a loud voice, "in an angry tone, hostilely, you could see that the man was in a violent temper"; that Corretjer said that the Guaynabo police headquarters had to be attacked and burned down and that the same thing that had been done in other towns had to be done in Guaynabo. [11], [12]

Is the evidence above stated enough to prove the crime with which the petitioner is charged? We think so. The lower court believed Lt. López Vélez' testimony. It can not be said that in so doing it committed manifest error. In reaching the conclusion that the defendant had expressed and behaved himself as aforesaid, the court was able to conclude that the counsel given carried with it the force of the crime, the perversity of the offense and was capable of in-

---

[11] This Court takes judicial notice of the events which occurred in this Island during the week of October 30, 1950. *Guadalupe* v. *Bravo, Warden,* 71 P.R.R. 913, 918.

[12] The defendant presented several witnesses, all of whom denied that Corretjer had expressed himself as aforesaid, but the lower court did not believe them.

citing his companions to act. We agree. It was not necessary for a disturbance of the peace or a riot to have ensued as a result of said counsel, to consummate the crime charged.

The writ will be discharged, the bond given cancelled and the petitioner imprisoned.

Mr. Justice Snyder did not take part in the consideration or decision of this case.

MR. ACTING CHIEF JUSTICE TODD, JR., dissenting.

I dissent. I consider that *The People* v. *Dessús et al.*, 12 P.R.R. 330, construing § 47 of the Penal Code,[1] was erroneously decided and, notwithstanding that it was ratified in *People* v. *Pillot García*, 26 P.R.R. 492 and *People* v. *Echavarría*, 29 P.R.R. 824 (although slightly modified), the error committed should not be perpetuated. I agree entirely with Mr. Justice Wolf's dissenting opinion in which Mr. Justice, later Chief Justice, Hernández, concurred, which in part reads as follows:

". . . The true import of the statute *is that some crime has been committed.* The words *'in the commission'* are not susceptible of any other interpretation. Moreover, no one can aid in the commission of a crime without also committing a crime. The words *'counsels or aids' are likewise used in the judgment,* therefore, if an information is drafted pursuant to this Section, *the execution of an act by another person or persons must necessarily be presupposed,* the intent and purpose of counseling the act being in the mind of the defendants.

"Section 47 seems to deal with the punishment for a misdemeanor rather than with its definition, said Section being a repetition of § 36, whereby it may be seen that what the Legislature had in mind was the 'commission of an offense.'

"Section 47 is found in our statutes in the Chapter dealing with 'Parties to Crime.'

---

[1] Section 47 of the Penal Code provides:

"Whenever an act is declared a misdemeanor, and no punishment for counseling or aiding in the commission of such act is expressly prescribed by law, every person who counsels or aids another in the commission of such act is guilty of a misdemeanor."

"On the theory that § 47 defines solicitation as a crime, the solicitation accomplished pursuant to said Section would be applicable only to a misdemeanor; solicitation of a felony is not at all defined in the Penal Code. Thus, the effect of construing this Section in the sense that a solicitation to commit a crime is punishable *per se,* would lead us to the conclusion that a person who advises another to strike or beat a third person, might be punished, but no penalty would be provided for soliciting to commit murder. This shows by itself that it was not the intent of the Legislature, upon enacting the Penal Code, to make § 47 define the substantive offense of a solicitation to commit a crime.

"All of the authorities are in agreement that solicitation constitutes in itself an independent and substantive crime. Some of these were punished, others were not, by the Common Law, *which constitutes a better reason, because an act which purports to define such an offense should define it in a clear and unequivocal manner.* This much has been done in the acts of different localities which define a special solicitation for the commission of an offense. Section 47 conveys to my mind the same idea as § 36, that when a crime is committed the persons who aid or counsel 'its commission' may be punished for the commission of a misdemeanor. Both Sections attempt to do away with the difference between accessories before the fact and principals, and not to establish any difference with regard to the punishment." (Italics ours.)

The opinion of the Court in *The People* v. *Dessús, supra,* delivered by Mr. Justice MacLeary, is based, in its entirety, on citations of cases construing the common law and which it applied to its construction of § 47 of our Penal Code. Said opinion contains no case whatsoever construing § 659 of the Penal Code of California, equivalent to § 47 of ours, in which such an interpretation has been given. It is not, as stated in Mr. Justice Marrero's opinion in this case, that "We have not found a single case to the contrary," but rather that actually it has not been possible to cite, nor have we found, any California case upholding the doctrine of *The People* v. *Dessús, supra,* which is now ratified again.

It matters not that under the common law it was not required that the criminal act was consummated for its solicitation to be punishable. Our law requires that the act be consummated.

I do not interpret the words quoted from *Schenck* v. *Hirshfeld*, 22 Cal. App. 709, 136 Pac. 725, in the restricted sense attributed to them in the opinion of the Court. The fact that said case involved a situation in which it was shown that a person had aided another in the commission of a crime, does not mean that said case is authority to maintain that the court was construing § 659 of the Penal Code of California as this Court had construed, some years previously, § 47, *supra*, in its two modalities of aiding or counseling. The case of Schenck does not at all decide that where the counseling to commit a crime is involved, it is not necessary that the crime be committed.

I consider, furthermore, that § 47, *supra*, does not constitute a mere repetition of § 36 of the Penal Code. The latter establishes who are principals or authors, including those who have advised *or solicited the commission of a crime;* and the former establishes the punishment for misdemeanors for which no punishment is expressly prescribed, for counseling or aiding in their commission.

The fact that § 47 is followed by the Sections of the Penal Code which involve attempts, that is, where the person has attempted to commit a crime but fails, does not mean either that the lawmaker's intent was to punish the counseling to commit a crime without the offense being committed. And this is so because since the doctrine established in *The People* v. *Dessús, supra*, is based on the cases decided under the common law, in the generality of these cases it is held that a solicitation is not an attempt, precisely because the crime is not accomplished. 1 Burdick, Law of Crime, § 106, p. 117. How can there exist an attempt to commit a crime merely because its commission is counseled, if the crime was not committed by the person solicited? As Burdick says: "When

a solicitation is agreed to by the person solicited and he does some overt act to carry out the proposed crime, an attempt is committed, and both parties would be liable. Likewise, if a solicitation to commit a felony results in its commission, then the solicitant becomes an accessory before the fact." That is why Mr. Justice Wolf in his dissenting opinion in the *Dessús* case held, correctly in any judgment, that "Both Sections [§ § 36 and 47] attempt to do away with the difference between accessories before the fact and principals, and not to establish any difference with regard to the punishment."

To the same effect, Dangel, in his recent work Criminal Law (1951), p. 224, after reiterating that solicitation or requesting another to commit a crime, even though the crime is not committed, constitutes an independent common law crime, says: "A 'solicitor' is distinguished from an 'accessory before the fact' in that the commission of the contemplated crime is not necessary in solicitation, but is essential to establish the status of accessory before the fact. Solicitation is also distinguishable from criminal attempt. The former is a preliminary step in the direction of a contemplated crime; the latter is an intentional act tending directly toward its commission. The weight of authority does not regard solicitation as a sufficient overt act to constitute an attempt. It is usually verbal while an attempt is physical. . . ."

In short, we are met, as we have previously said, with a Section taken from the Penal Code of California which, in the modality involved herein, has apparently not been construed in said state. In Puerto Rico, for 44 years, this Court, by a majority of three to two, has interpreted that the mere counseling to which § 47 refers, without any further consequence, creates a crime. With all due respect to the view of all the judges who have thus believed in the past and of those who now think likewise, and notwithstanding that the division existing at present in the Court, because of a vacancy and a disqualification, is more significant, I cannot agree with said construction. In my judgment legisla-

tive action would lie defining clearly the offense, if it was its intent to create same, and in so doing, it should take into consideration the fact that under the doctrine of the *Dessús* case, now ratified, the advice to commit a felony, when the crime is not committed, does not constitute a crime in Puerto Rico.

My dissent being limited to the legal question raised, I express no opinion as to whether the evidence for the prosecution was sufficient pursuant to the modified rule established in *People* v. *Echavarría, supra.* It should be noted, however, that the third error assigned alleges, consistent with the preceding errors, that said evidence did not show that a disturbance of the peace had occurred and, even less, a riot, as a consequence of the conduct with which the appellant is charged.

For the foregoing reasons, the judgment should be reversed.